93 P.3d 861 (2004)
151 Wash.2d 900
Thomas R. DREILING, Plaintiff,
v.
Naveen JAIN and Anuradha Jain, husband and wife, and their marital community; Rufus W. Lumry, III, and his marital community; Acorn Ventures I.S., L.L.C., a Washington limited liability company; John E. Cunningham, IV, and his marital community; Stiles A. Kellett, Jr., and his marital community; Kellett Investment Corporation, a corporation, and its affiliate Kellett Partners L.P., a limited partnership; Clear Fir Partners, L.P., a partnership; David House, and his marital community; Peter L.S. Currie, and his marital community; Gary C. List, and his marital community; Bernee D.L. Strom, and her marital community; Carl Stork, and his marital community; Ellen Alben, and her marital community; Tammy D. Halstead, and her marital community; Arun Sarin, and his marital community; Ashok Narasimhan, and his marital community; Russell C. Horowitz, and his marital community; Porpoise Corp., a corporation; John Keister, and his marital community; Richard Thompson, and his marital community; Douglas Bevis, and his marital community; The Bevis Family Trust; Rasipuram Arun, and his marital community; Edmund O. Belsheim, and his marital community; and Deloitte & Touche, L.L.P, Defendants, and
Infospace, Inc., a Delaware corporation, Nominal Defendant/Respondent, and
The Seattle Times Company, Intervenor/Petitioner.
No. 73756-8.
Supreme Court of Washington, En Banc.
Argued November 13, 2003.
Decided June 24, 2004.
*864 Graham & Dunn PC, Judith Endejan, Janis White, Seattle, for petitioner.
Paul Brown, Kevin Paulich, Steven Ross, Jean Huffington, Seattle, Paul Dawes, John Tang, Menlo Park, CA, Sirianni & Youtz, Stephen Youtz, Seattle, Charles Kenneth Wiggins, Bainbridge Island, Perkins Coie, Harry Schneider, Barry Kaplan, George Greer, Daniel Dunne, Matthew Carvalho, Gillian Apfel, Mark Roth, Kelly Noonan, Raymond Weber, Seattle, David Friedman, San Francisco, for respondents.
CHAMBERS, J.
"Justice in all cases shall be administered openly...." CONST. art. I, § 10. The open operation of our courts is of utmost public importance. Justice must be conducted openly to foster the public's understanding and trust in our judicial system and to give judges the check of public scrutiny. Secrecy fosters mistrust. This openness is a vital part of our constitution and our history. The right of the public, including the press, to access trials and court records may be limited only to protect significant interests, and any limitation must be carefully considered and specifically justified.
We are called upon to apply these principles to a particular type of private dispute adjudicated within a public forum. To determine the appropriate standard, we must first decide the nature of a motion to terminate a shareholder derivative suit. We conclude that the motion to terminate is substantially similar to a dispositive motion on the merits. Accordingly, we hold that the analytical approach set forth in Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 640 P.2d 716 (1982), shall be used before the motion and documents filed in support thereof may be sealed.

FACTS
Thomas Dreiling, among other plaintiffs, is a shareholder of InfoSpace, Inc. (InfoSpace), a Delaware corporation. He filed this shareholder's derivative action against certain officers and directors of InfoSpace, alleging insider trading, breach of fiduciary duty, materially false and misleading statements about revenues and mergers, and other corporate wrongdoings. The Seattle Times newspaper (Times) has been following the InfoSpace litigation (aspects of which are before several different state and federal courts)[1] for some time. The Times has made a formal motion to intervene in this case and to unseal the records. Because it is unnecessary for us to detail the facts of the underlying litigation to resolve the issues before us, we will briefly outline only the events which gave rise to review.
Before bringing a shareholders' derivative action, shareholders must present their claims to the corporation and give the corporation an opportunity to pursue the case. See generally Joy v. North, 692 F.2d 880 (2d Cir.1982). InfoSpace is a Delaware corporation, and under Delaware law, the corporation has a variety of options, one of which is to form a special litigation committee (SLC) to evaluate the shareholders' claims. In re Oracle Corp. Derivative Litig., 808 A.2d 1206, 1210 (Del.Ch.2002). If the SLC concludes that the suit is in the corporation's best interest, the corporation may assume the shareholders' place and pursue the suit on its own. Id. However, if the SLC concludes the action is not in the corporation's *865 best interest, the corporation may bring a motion to terminate the suit. Id. at 1210-11. If the court does not grant the motion, the court may permit the shareholders to prosecute the suit on the corporation's behalf. Zapata Corp. v. Maldonado, 430 A.2d 779, 784 (Del.1981).
In this case, InfoSpace elected to form an SLC, and the trial court stayed the shareholders' action pending the SLC investigation. The SLC was formed of directors who were not serving on the board at the time of the alleged misconduct and were therefore presumably independent. The SLC investigated the claims and recommended that the action be terminated. Before it filed the motion to terminate with the court, InfoSpace received a protective order allowing it to file its motion and supportive documentation under seal. The court gave the SLC the authority to self-designate confidential documents, and it prohibited disclosure of confidential documents (except to the plaintiff). Much of the record was placed under seal. The Times challenges this order. Dreiling opposed dismissal and litigation resumed. Ultimately, the trial court dismissed some claims and stayed others. See Clerk's Papers (CP) at 1264 (Order on Special Litig. Comm.'s Mot. to Dismiss & Various Mots.).
The Times made a formal motion to intervene and to unseal the records. The trial court granted leave to intervene but largely denied the motion to unseal. This order said in relevant part:
A special litigation committee's task is an unusual one in the context of securities litigation. The committee must investigate the plaintiff's claims and report to the court why those claims should or should not be pursued by the corporation. To accomplish this evaluation, the committee must review its internal documents, including legal advice and sensitive proprietary information, and must also interview its employees, some of whom have allegedly engaged in wrongdoing, and consult experts. The results of the inquiry are presented in a special litigation committee report. In order to evaluate the accuracy and reasonableness of the report in this case, the court ordered that plaintiff's counsel be given access to internal corporate documents, employee interviews, and expert consultations reviewed by the Committee. This information would not be obtainable in ordinary litigation such as that currently pending against Infospace in another King County Department and in U.S. District Court for the Western District of Washington, because of privilege or protections of the work product doctrine. The court ordered the disclosure only with appropriate confidentiality requirements and protective orders in place.
The court finds that most of the information contained in the Special Litigation Committee's Report, the SLC's motion, the plaintiff's response, and the court's letter ruling of December 6, 2002, is based on protected information. It would be error to order this information disclosed to the public.
At the same time, some of the documents filed as attachments to the SLC's report and motion and plaintiff's responses either are in the public domain or do not have the same privileged or proprietary status.
Therefore, counsel for the SLC is directed to serve and file, within 45 days of this order, a log of those documents filed as attachments to its report and motion, the plaintiff's response, and the SLC's reply that should remain confidential. The log should be organized by attachment tab number and Bates production number. Counsel should describe the general nature of the document and the specific basis for its continued confidentiality. The documents not included in the log shall be disclosed. If the court finds the SLC's justification as to a particular document inadequate, that document will also be disclosed, after advance notice to plaintiff and SLC counsel and an opportunity to object to the disclosure.
CP at 1129 (Order Granting the Mot. of the Seattle Times Co. to Intervene & Directing the Filing of a Log as to Docs.).
The order did not articulate the specific analytical approach the SLC should take to determine if a document is properly confidential or the analysis the trial court would undertake if the sealing were challenged. *866 Overwhelmingly, documents were simply filed under seal. After the intervention of the Times, some documents were unsealed. This court granted interlocutory review of a limited question of whether the trial court applied the correct legal standard when it sealed material and briefing filed with the court in support of the SLC's motion to terminate a shareholder derivative lawsuit.

ISSUE
We must decide when a motion to terminate a shareholders' derivative suit and the documents filed in support thereof may be sealed.

ANALYSIS

STANDARD OF REVIEW
Generally, we review a trial court's decision to seal records for abuse of discretion. King v. Olympic Pipe Line Co., 104 Wash.App. 338, 348, 16 P.3d 45 (2000); accord Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir.2003). However, if the trial court rested its decision on an improper legal rule, the appropriate course of action is to remand to the trial judge to apply the correct rule. King, 104 Wash.App. at 369, 16 P.3d 45; see also Pansy v. Borough of Stroudsburg, 23 F.3d 772, 775 (3d Cir.1994) (remanded back to district court to reconsider whether settlement agreement relating to police misconduct should be unsealed); Foltz, 331 F.3d at 1134. The trial court should "articulate on the record findings supporting its judgment." Pansy, 23 F.3d at 789 (holding trial court erred in granting blanket protective order sealing materials filed in connection with a sexual harassment claim against a police department). Questions of law are reviewed de novo. Rivett v. City of Tacoma, 123 Wash.2d 573, 578, 870 P.2d 299 (1994).

MOTIONS TO SEAL AND ARTICLE I, SECTION 10
Our state constitution requires that "[j]ustice in all cases shall be administered openly." CONST. art. I, § 10. This guarantees the public and the press a right of access to judicial proceedings and court documents in both civil and criminal cases. Cohen v. Everett City Council, 85 Wash.2d 385, 388, 535 P.2d 801 (1975). Our founders did not countenance secret justice. "[O]perations of the courts and the judicial conduct of judges are matters of utmost public concern." Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 839, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978).
Open access to government institutions is fundamental to a free and democratic society. Open access to the courts is grounded in our common law heritage and our national and state constitutions. For centuries publicity has been a check on the misuse of both political and judicial power. As a leading theorist of the Enlightenment wrote:
Let the verdicts and proofs of guilt be made public, so that opinion, which is, perhaps, the sole cement of society, may serve to restrain power and passions; so that the people may say, we are not slaves, and we are protected  a sentiment which inspires courage and which is the equivalent of a tribute to a sovereign who knows his own true interests.
CESARE BECCARIA, ON CRIMES AND PUNISHMENTS 22 (Henry Paolucci trans., Bobbs-Merrill Co., Inc.1963) (1764).
Proceedings cloaked in secrecy foster mistrust and, potentially, misuse of power. Again, the operations of the courts and the judicial conduct of judges are matters of utmost public concern. Seattle Times Co. v. United States Dist. Court, 845 F.2d 1513, 1516 (9th Cir.1988). Our state constitution "entitles the public, and ... the press is part of that public, to openly administered justice." Cohen, 85 Wash.2d at 388, 535 P.2d 801. "The right of access to judicial records, like the openness of court proceedings, serves to enhance the basic fairness of the proceedings and to safeguard the integrity of the fact-finding process." Republic of Philippines v. Westinghouse Elec. Corp., 139 F.R.D. 50, 56 (D.N.J.1991) (citing Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984)).
Openness is presumptive, but it is not absolute. The public's right of access may be limited to protect other significant *867 and fundamental rights, such as a defendant's right to a fair trial. Federated Publ'ns, Inc. v. Kurtz, 94 Wash.2d 51, 65, 615 P.2d 440 (1980). The burden of persuading the court that access must be restricted to prevent a threat to an important interest is generally on the proponent, with carefully guarded exceptions. Ishikawa, 97 Wash.2d at 37, 640 P.2d 716 (right to a fair trial). We now turn to how these principles apply in an unusual but important form of action, the shareholder derivative suit. As this is a case of first impression in this state, we have not heretofore given guidance to our trial courts on the treatment of materials filed in support of motions to terminate.

NATURE OF THE SLC MOTION TO TERMINATE AND SUPPORTIVE DOCUMENTS
First, there are good reasons to distinguish between dispositive motions and discovery. Mere discovery may be sealed "for good cause shown." Civil Rule (CR) 26(c).[2] "Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). As this information does not become part of the court's decision making process, article I, section 10 does not speak to its disclosure. However, the same cannot be said for materials attached to a summary judgment motion. Summary judgment effectively adjudicates the substantive rights of the parties, just like a full trial. Accordingly, when previously sealed discovery documents are attached in support of a summary judgment motion, they lose their character as the raw fruits of discovery. Such documents may not be kept from public view "without some overriding interest" requiring secrecy. Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 252 (4th Cir.1988).
InfoSpace contends the character of a motion to terminate a derivative lawsuit is unique and should not be treated like a summary judgment motion. Instead, InfoSpace contends a motion to terminate is more like an internal corporate matter or a voluntary settlement agreement. It effectively asks us to apply standards underlying CR 26(c), which allows a court to limit discovery and its use. See also General Rule (GR)15(c)(2)(B). The Times argues that a motion to terminate is the functional equivalent to a summary judgment motion and that the trial court erred in not applying more stringent factors before sealing the documentation filed in support of the motion to terminate.[3]
From the beginning, courts have recognized that the motion to terminate is not precisely a summary judgment motion. Zapata, 430 A.2d at 788-89. Instead, "[i]t is perhaps best considered as a hybrid summary judgment motion for dismissal because the stockholder plaintiff's standing to maintain the suit has been lost.... There is some analogy to a settlement in that there is a request to terminate litigation without a judicial determination of the merits." Id. at 787; accord Kaplan v. Wyatt, 484 A.2d 501, 506-07 (Del.Ch.1984) ("the motion is a hybrid one, derived by analogy to a motion to dismiss a derivative suit based upon a voluntary settlement [and a] unilateral[ ] ... voluntary dismissal...."). But subsequent courts have increasingly treated a motion to terminate as if it were a summary judgment motion. E.g., Joy, 692 F.2d at 893; In re Cont'l Ill. Sec. Litig., 732 F.2d 1302, 1309 (7th Cir.1984); Kaplan, 484 A.2d at 507-09, 519; cf. In re Oracle Corp. Derivative Litig., 824 A.2d 917, *868 928-29 (Del.Ch.2003) (describing decision making process in terms substantially similar to summary judgment).
InfoSpace argues that there is currently a split among the circuits. Compare Joy, 692 F.2d 880 with In re Perrigo Co., 128 F.3d 430, 438 (6th Cir.1997). We disagree. In Perrigo, the Sixth Circuit considered when a SLC report should be disclosed. Consistent with the holdings of the Second and Seventh Circuits, the Sixth Circuit found that the critical question was whether the report was part of the trial judge's record in adjudicating a potentially dispositive motion. Since it was not, the Sixth Circuit kept the report confidential. But "[i]f and when the district court intends to rely on the Report in making a decision in this case, then at that time it should conduct a hearing regarding whether the Report or parts thereof should be disclosed to the public." Id. at 440.
Similarly, most courts have treated a motion to terminate as the functional equivalent to a summary judgment motion and applied some sort of exacting scrutiny before allowing supporting documentation to be filed under seal. E.g., Joy, 692 F.2d at 893;[4]In re Cont' l Ill. Sec. Litig., 732 F.2d at 1309; Kaplan, 484 A.2d at 507-09, 519. We agree and hold that a motion to terminate a derivative lawsuit is functionally equivalent to a summary judgment or other motion on the merits.
While we recognize that the special nature of this procedures bears on whether a motion to seal a particular document should be granted, we find no reason to treat the report as mere discovery when it is filed in support of a motion to terminate.[5] CR 26(c) applies primarily to unfiled discovery, not documents filed with the trial court in support of a motion that can potentially dispose of a case. Blanket protective orders are disfavored, especially once documents have been filed. Under Federal Rules of Civil Procedure (Fed.R.Civ.P.) 26(c), the Ninth Circuit has recently required that the proponent of closure show good cause for sealing each document. Foltz, 331 F.3d at 1130 ("A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted."). No individual assessment was made until after the Times intervened, and it is unclear what legal standard was applied at that time. Similarly, we conclude that GR 15 gives insufficient guidance to direct trial courts in this position.
Nearly identical arguments were closely considered and rejected by the Seventh Circuit nearly 20 years ago. In re Cont'l Ill. Sec. Litig., 732 F.2d 1302. There, the court was explicitly asked the core question before this court; whether newspapers could have access to an SLC report. The Seventh Circuit *869 concluded that "[b]ecause the Report was admitted into evidence in connection with a motion pending before the district court and because the court expressly relied on the Report in reaching a tentative disposition," the trial court did not abuse its discretion in releasing the report. Id. at 1304. The Seventh Circuit also explicitly rejected the argument, made today by InfoSpace, that the Fed.R.Civ.P. 26(c) standard should be applied. Id. at 1309 ("[the] motion was designed to (and did) result in the dismissal of claims against several defendants.... We hold, therefore, that the presumption of access applies to the hearings held and evidence introduced in connection with Continental's motion to terminate." (footnote and citation omitted)).
The appropriate analytical approach was set forth in Ishikawa, 97 Wash.2d 30, 640 P.2d 716. There, newspapers sought access to a closed hearing and to records submitted in support of a defendant's motion to dismiss a murder prosecution. Ishikawa, 97 Wash.2d at 32-33, 640 P.2d 716. This court considered the claims in light of our constitutional requirement that "[j]ustice in all cases shall be administered openly." CONST. art. I, § 10. "This `separate, clear and specific provision entitles the public, and ... the press is part of that public, to openly administered justice.'" Ishikawa, 97 Wash.2d at 36, 640 P.2d 716 (quoting Cohen, 85 Wash.2d at 388, 535 P.2d 801). However, this right is not absolute "and may be limited to protect other interests," such as a defendant's right to a fair trial. Ishikawa, 97 Wash.2d at 36, 640 P.2d 716. To balance these potentially conflicting principles, this court laid out five factors:

1. The proponent of closure and/or sealing must make some showing of the need therefor. Kurtz, [94 Wash.2d] at 62, 615 P.2d 440. In demonstrating that need, the movant should state the interests or rights which give rise to that need as specifically as possible without endangering those interests.
....
.... Because courts are presumptively open, the burden of justification should rest on the parties seeking to infringe the public's right. See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 558-59, 569-70, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). From a practical standpoint, the proponents will often be in the best position to inform the court of the facts which give rise to the alleged need for closure or sealing.....
2. "Anyone present when the closure [and/or sealing] motion is made must be given an opportunity to object to the [suggested restriction]". Kurtz, [94 Wash.2d] at 62 [615 P.2d 440].
For this opportunity to have meaning, the proponent must have stated the grounds for the motion with reasonable specificity, consistent with the protection of the right sought to be protected. At a minimum, potential objectors should have sufficient information to be able to appreciate the damages which would result from free access to the proceeding and/or records. This knowledge would enable the potential objector to better evaluate whether or not to object and on what grounds to base its opposition.
3. The court, the proponents and the objectors should carefully analyze whether the requested method for curtailing access would be both the least restrictive means available and effective in protecting the interests threatened. See Kurtz, [94 Wash.2d] at 63-64 [615 P.2d 440]. If limitations on access are requested to protect the defendant's right to a fair trial, the objectors carry the burden of suggesting effective alternatives. If the endangered interests do not include the defendant's Sixth Amendment rights, that burden rests with the proponents.
4. "The court must weigh the competing interests of the [parties] and the public," Kurtz, [94 Wash.2d] at 64 [615 P.2d 440], and consider the alternative methods suggested. Its consideration of these issues should be articulated in its findings and conclusions, which should be as specific as possible rather than conclusory. See People v. Jones, 47 N.Y.2d 409, 415, 391 N.E.2d 1335, 418 N.Y.S.2d 359 (1979).
5. "The order must be no broader in its application or duration than necessary to serve its purpose ..." Kurtz, [94 *870 Wash.2d] at 64 [615 P.2d 440]. If the order involves sealing of records, it shall apply for a specific time period with a burden on the proponent to come before the court at a time specified to justify continued sealing.
Ishikawa, 97 Wash.2d at 37-39, 640 P.2d 716 (emphasis added) (second and third alterations in original). This court has since explicitly extended Ishikawa to civil cases, albeit in dicta. Allied Daily Newspapers of Wash. v. Eikenberry, 121 Wash.2d 205, 848 P.2d 1258 (1993). There, we found unconstitutional a statute that without individual analysis prohibited disclosure of any information related to the identity of a child victim of sexual assault. Id. at 208, 848 P.2d 1258. Substantially relying on the state constitution, we ruled:
We adhere to the constitutional principle that it is the right of the people to access open courts where they may freely observe the administration of civil and criminal justice. Openness of courts is essential to the courts' ability to maintain public confidence in the fairness and honesty of the judicial branch of government as being the ultimate protector of liberty, property, and constitutional integrity. This right of access is not absolute, however, and may be outweighed by some competing interest as determined by the trial court on a case-by-case basis according to the Ishikawa guidelines.
Allied Daily Newspapers, 121 Wash.2d at 211, 848 P.2d 1258 (emphasis added); accord In re Cont'l Ill. Sec. Litig., 732 F.2d at 1308 ("the policy reasons for granting public access to criminal proceedings apply to civil cases as well.... These policies relate to the public's right to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." (citations omitted)); King County Local Rule 26(c); Foltz, 331 F.3d at 1135. We now explicitly hold that the same guidelines applied in Ishikawa must be applied to documents filed in support of dispositive motions, including motions to terminate.[6]

ADDITIONAL CONSIDERATIONS
Our comments regarding the particulars of this case are intended to illuminate the factors for general application and to guide the court below on rehearing, not to prejudge the result as to any particular document. We note with approval the opinion of Judge Betty Fletcher in Foltz, 331 F.3d 1122, and find it instructive. It provides an apt guide to the appropriate mechanics and procedures to be followed when a trial court is confronted with a motion to place documents under seal, whether the documents are pure discovery or are filed in support of dispositive court action.
In Foltz, the parties agreed to seek three protective orders, including a blanket protective order covering all discovery and prohibiting dissemination of disclosed documents. At the conclusion of the case, the trial court granted an agreed order sealing all documents except those that the parties agreed to remain unsealed. Subsequently, public interest groups moved to intervene to gain access to the discovery material. The trial court refused to modify its protective orders. The Ninth Circuit Court of Appeals, interpreting Fed.R.Civ.P. 26(c), concluded that trial courts should generally not approve blanket protective orders.[7] As the Ninth Circuit noted, we start with a "strong presumption of access" to court records. Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir.1995) (recognizing strong presumption in context of civil trial); accord United States v. Edwards, 672 F.2d 1289, 1294 (7th Cir.1982) (same in context of criminal trial); United States v. Criden, 648 F.2d 814, 823 (3d Cir.1981) (same).
*871 The Foltz court concluded that a party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted. Foltz, 331 F.3d at 1130. Unsubstantiated allegations will not satisfy the rule. The requesting party must support, where possible, its request by affidavits and concrete examples. Id. Entire documents should not be protected where mere redaction of sensitive items will satisfy the need for secrecy. Id. at 1137. Particularized findings must be made by the trial court to support meaningful review. Id. at 1135. When third parties move to intervene, the court may not stand on its previous order. Instead, these collateral litigants may challenge those documents which should not have been placed under seal in the first place and may be entitled to an order modifying the original protective order. Foltz, 331 F.3d at 1131. Reliance on the confidentiality provisions of the original protective order does not foreclose independent discovery by intervenors, as it is not reasonable to expect the court to hold records under seal forever. Id. at 1138. We agree and explicitly adopt the principles articulated by the Ninth Circuit in Foltz.
Some materials attached to the SLC report may be subject to the attorney-client or work product privileges. Of course, the mere presence of an attorney somewhere in the causal chain who generated the document is not sufficient. See generally Joy, 692 F.2d at 893-94 (citing In re John Doe Corp., 675 F.2d 482 (2d Cir.1982)).
Many courts have found that these privileges are waived when the documents are submitted to court. See generally id. As the Second Circuit noted in ruling on a similar question:

To the extent that communications arguably protected by the attorney-client privilege may be involved in that data, a motion for judgment based on the report waives the privilege. The work-product immunity will apply to the documents usually included within its terms to the extent that they are working papers of the committee's counsel and are not communicated to the committee. Once communicated, the immunity may not be claimed, since the papers may be part of the basis for the committee's recommendations.
Joy, 692 F.2d at 893-94 (emphasis added) (footnote and citation omitted) (citing In re John Doe Corp., 675 F.2d 482).
We stress that the mere fact an attorney produced the SLC report is not sufficient to bring it under the protection of the attorney-client privilege. "The attorney-client privilege exists in order to allow the client to communicate freely with an attorney without fear of compulsory discovery." Dietz v. Doe, 131 Wash.2d 835, 842, 935 P.2d 611 (1997) (citing State ex rel. Sowers v. Olwell, 64 Wash.2d 828, 832, 394 P.2d 681 (1964)). The report was prepared by independent corporate board members, as independent corporate board members. The fact one is an attorney does not make the report privileged. Cf. Joy, 692 F.2d at 893-94 (citing In re John Doe Corp., 675 F.2d 482). Nor does it automatically come under the protection of the work product privilege. "The work product rule ... protect [s] materials prepared in anticipation of litigation." Limstrom v. Ladenburg, 136 Wash.2d 595, 613, 963 P.2d 869 (1998). But courts have repeatedly held that once the SLC report and attachments are given to the SLC, the work product privilege no longer automatically applies. Joy, 692 F.2d at 893-94 (citing In re John Doe Corp., 675 F.2d 482).
We leave it in the capable hands of the trial court to determine whether and to what extent, within the context of Ishikawa, the privileges have been waived by filing with the court. Garner v. Wolfinbarger, 430 F.2d 1093, 1097, 1103-04 (5th Cir.1970).

CONCLUSION
We hold that motions to terminate derivative litigation suits are analogous to motions for dispositive judgment. Accordingly, any material submitted to the trial court in support of a motion to terminate is presumptively accessible to the public and may be sealed only in accordance with Ishikawa. It is for the trial court to determine if there is a waiver of attorney-client and work product *872 privilege for any document submitted to the court in support of a motion to terminate. We leave it in the able hands of the trial court to determine if private, personal, or financial information of the certain defendants should be redacted prior to release. We remand to the trial court for further proceedings.
WE CONCUR: ALEXANDER, C.J., JOHNSON, MADSEN, IRELAND, BRIDGE and OWENS, JJ.
FAIRHURST, J., (concurring).
I agree with the majority that the justice system should be open subject to very specific exceptions, and I agree that the Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 640 P.2d 716 (1982), factors should apply to the determination of what court documents may be sealed in this case.
I write separately because the InfoSpace Special Litigation Committee (SLC), prior to filing its motion to terminate the shareholder derivative suit, received a protective order allowing it to file its motion and supportive documentation under seal.
In light of our decision in this case that such documents may be open to the public after the Ishikawa factors are applied, I believe the SLC should be allowed to withdraw all of its documents and submit anew its pleadings and any attachments  knowing that those documents may be subject to disclosure pursuant to the Ishikawa factors.
KENNEDY, J.P.T., concurs.
NOTES
[1] After oral argument, the Times made several motions to supplement regarding a related case in federal court. Because we do not feel this case presents an ideal vehicle to decide whether the risk that material filed in support of a motion to terminate in one case may be used in another case, the information is irrelevant to our analysis and the motion is denied.
[2] CR 26(c) provides:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:... (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way.
(Emphasis added.)
[3] Under Delaware law, a corporation seeking to dismiss a derivative action is required to prepare and submit an SLC report to the court. Zapata, 430 A.2d at 788-89. Based on the motion to dismiss, the SLC report and responsive briefing, the trial court engages in a two-step analysis to determine if the case should be dismissed, stayed, given over to the corporation to control, or pursued by the nominal plaintiffs. Id.
[4] "The [SLC] Report is no longer a private document. It is part of a court record. Since it is the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny. The potential harm asserted by the corporate defendants is in disclosure of poor management in the past. That is hardly a trade secret." Joy, 692 F.2d at 894.
[5] Further, we recognize that Congress has provided corporations with additional tools to prevent discovery from being used abusively by plaintiffs. While these tools are not at issue in this case, we address them briefly because passing mention is made in the briefs. First, a provision of the federal Private Securities Litigation Reform Act of 1995 stays discovery in securities class action suits until a court determines the suit has merit. See 15 U.S.C. § 78u-4(b)(3)(B); see also Newby v. Enron Corp., 338 F.3d 467, 469-71 (5th Cir.2003). Second, Congress passed the Securities Litigation Uniform Standards Act of 1998 (SLUSA) to prevent plaintiffs from circumventing federal protections by filing suits in state courts and using the comparatively lenient state discovery rules to avoid the discovery stay. SLUSA authorizes federal courts to quash discovery in state courts if the federal court determines such discovery is abusive. See 15 U.S.C. § 78u-4(b)(3)(D); see also Newby, 338 F.3d at 469-71; accord Pierce County, Wash. v. Guillen, 537 U.S. 129, 146-47, 123 S.Ct. 720, 154 L.Ed.2d 610 (2003) (asserting Congress's commerce clause power under certain circumstances to regulate discovery in state courts). The federal statutes are aimed at preventing "costly `extensive discovery and disruption of normal business activities.'" Newby, 338 F.3d at 471 (quoting John F. Olson, et al., Pleading Reform, Plaintiff Qualification and Discovery Stays under the Reform Act, 51 Bus. Law 1101-03 (1996)). We note that related litigation is ongoing in federal courts and recently InfoSpace's motion for summary judgment against related plaintiffs was denied. See Dreiling v. Jain, 281 F.Supp.2d 1234 (W.D.Wash.2003).
[6] Because of our substantive resolution of these questions on state common law and constitutional grounds, we do not reach the Times' federal theories. Similarly, since the court's order did not prevent the Times from publishing the information contained in the sealed records, but merely prevented them from accessing them through the King County Superior Court Clerk's office, we do not reach its prior restraint claim under the state constitution. Cf. City of Seattle v. Bittner, 81 Wash.2d 747, 756, 505 P.2d 126 (1973).
[7] The appeals court noted that the procedure followed by the trial court was understandable given the volume of documents. Foltz, 331 F.3d at 1131.