[No. 27535-3-III.   Division Three.   August 19, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. MARIO GIL MENDEZ, *Appellant*, YAKIMA HERALD-REPUBLIC, *Intervenor*.

*Janet G. Gemberling* (of *Gemberling & Dooris PS*), for appellant.

*James P. Hagarty, Prosecuting Attorney,* and *Kenneth L. Ramm Jr.* and *Kevin G. Eilmes, Deputies,* for respondent.

*Sarah Lynn Clarke Wixson* (of *Stokes Lawrence Velikanje Moore & Shore*), for intervenor.

¶1 Korsmo, J. — Mario Mendez appeals a ruling allowing the *Yakima Herald-Republic* access to previously sealed billing records from his murder prosecution. We conclude that the newspaper had standing to unseal the records of this closed criminal case and that the trial court did not err in permitting access to nonprivileged materials. The disclosure order is affirmed.

## FACTS

¶2 Mr. Mendez and Jose Sanchez were charged in Yakima County with aggravated murder in the killings of Ricardo and Meya Causor. The prosecutor filed a notice of intent to seek the death penalty for each defendant. The court appointed attorneys who were qualified to handle aggravated murder cases.

¶3 A "budget judge" was appointed to address costs and attorney fees incurred by counsel. This judge was not the assigned trial judge. Bills were submitted to the budget judge for payment by the county. Defense counsel *ex parte* sought and obtained an order sealing the billing records and related documents.[1]

¶4 At some point, the State declined to seek the death penalty.[2] Mr. Mendez ultimately reached an agreement and pleaded guilty to one count of first degree murder and one count of second degree assault in exchange for his testimony against Mr. Sanchez. Mr. Mendez was sentenced to 360 months in prison. Mr. Sanchez was convicted by a jury

---

[1] The order is not part of the record in this appeal.

[2] Very little information about the early procedural history of the criminal case is included in the record of this appeal.

of several crimes, including two counts of aggravated murder. His appeal from sentences of life in prison is pending in this court.[3]

¶5 The *Yakima Herald-Republic* sought the billing records by filing a Public Records Act, chapter 42.56 RCW, request in both criminal cases. The trial court denied the request and the newspaper appealed the ruling in Mr. Sanchez's case directly to the Washington Supreme Court.[4] The court noted that the Mendez case was final because the judgment and sentence had been entered and that the *Yakima Herald-Republic* could approach the budget judge to unseal the records per GR 15(e)(2).

¶6 Acting on that suggestion, the newspaper filed motions to intervene and unseal the records in Mr. Mendez's case. The trial court granted both motions. The court permitted access to all but privileged communications or materials that constituted attorney work product. The court directed Mr. Mendez's counsel to redact documents in order to protect privileged information.

¶7 Mr. Mendez appealed to this court. After lengthy disputes over the redaction process, the trial court ruled that it would redact the documents itself. This court stayed the release order pending the outcome of this appeal.

## ANALYSIS

¶8 Mr. Mendez challenges the authority of the newspaper to intervene in a criminal case. He also argues that the billing records are not subject to the constitutional command that justice be administered openly and that, even if the records are subject to disclosure, the trial court erred by ordering disclosure. We address each argument in turn.

---

[3] *State v. Sanchez*, No. 26816-1-III (Wash. Ct. App.).

[4] That case, *Yakima County v. Yakima Herald-Republic*, No. 82229-8, was argued March 9, 2010.

*Intervention*

¶9 The appellant argues that intervention is not permitted by existing case authority and that public policy requires that a separate action be maintained to lift a sealing order. The existing precedent does not address a closed criminal case such as this one. We also believe public policy actually favors addressing a sealing order in the criminal case instead of a separate action.

¶10 The issues in this case are framed by two constitutional provisions. Article I, section 10 of the Washington Constitution provides, "Justice in all cases shall be administered openly, and without unnecessary delay." A criminal defendant is guaranteed the right "to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." CONST. art. I, § 22 (partial).

¶11 The Washington Supreme Court first addressed the issue of intervention in a criminal case in *State v. Bianchi*, 92 Wn.2d 91, 593 P.2d 1330 (1979). There a newspaper was allowed to intervene in a pending criminal case in order to challenge the sealing of the affidavit of probable cause. *Id.* at 91-92. The defendant and the prosecutor both appealed the ruling. *Id.* at 91. The Washington Supreme Court reversed, noting that there was "no rule, statute, or precedent" permitting a third party to intervene in a criminal case. *Id.* at 92. While agreeing that the press played an important role in informing the public about criminal cases, the press had no "direct interest" in the outcome of the case. *Id.* "The only purpose of a criminal trial is the legal determination of the defendant's guilt or innocence." *Id.* Given the lack of press interest in the outcome, there was no justification for "intervention and the disruption of the pending criminal proceedings inherent in the intervention process." *Id.* at 92-93. The court suggested an independent proceeding for mandamus, prohibition, or declaratory judgment as a means for a third party to challenge a sealing order. *Id.* at 93.

¶12 Seizing upon the suggestion in *Bianchi*, future cases involved independent proceedings outside of the criminal case. An action for writ of prohibition or declaratory judgment was used in *Federated Publications, Inc. v. Kurtz*, 94 Wn.2d 51, 615 P.2d 440 (1980). There the trial court had closed a pretrial hearing in order to protect against publicity during jury selection. *Id.* at 53. Suit was filed after jury selection was complete. The defendant, her counsel, the prosecutor, and the trial judge were named as defendants. *Id.* After the criminal trial was completed, the defendant and the attorneys were dropped from the case. The action continued against the trial judge. *Id.* at 54. The court concluded that the closure had been appropriate and denied the petition. *Id.* at 65.

¶13 The question of press involvement in a criminal case arose again in *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982). There the trial court had closed a pretrial motion to dismiss a murder prosecution. The parties had provided written materials to the trial court in chambers. *Id.* at 33. The parties sought to have the motion hearing closed; the press was advised of the closure request. Representatives from two newspapers addressed the closure question. *Id.* The court granted the motion to close the courtroom and heard the motion the next day in a closed proceeding. The motion to dismiss was denied, but the pleadings and the transcript of the motion hearing were sealed. *Id.*

¶14 Once jury selection had concluded, the press moved to open the sealed records. The motion was denied. After the jury convicted the defendant, the motion was renewed. The trial court again denied it. *Id.*

¶15 The newspapers then filed separate mandamus actions against the trial judge in the Washington Supreme Court. The sealed record from the murder trial was forwarded to that court under seal. The prosecutor who represented the trial judge was permitted to review the sealed materials, as were the counsel appointed to represent the murder defendant in her appeal from the conviction. Attor-

neys for the newspapers were not permitted to see the documents. *Id.* at 34. The defendant later sought to intervene in the mandamus case. That request was denied because it was untimely and the defendant was not a necessary party. *Id.* at 35.

¶16 The court then discussed the requirements of article I, section 10. Distinguishing between the necessary showings that must be made at each step of the proceedings, the court reversed the case and remanded for a new hearing. *Id.* at 37, 45-46. In the course of its analysis, the court expanded its ruling in *Kurtz* and set forth a five factor test to be applied by trial courts considering closure requests. The five factors are (1) the proponent of closure must make a showing of compelling need, (2) any person present when the motion is made must be given an opportunity to object, (3) the means of curtailing open access must be the least restrictive means available for protecting the threatened interests, (4) the court must weigh the competing interests of the public and of the closure, and (5) the order must be no broader in application or duration than necessary. *Id.* at 37-39.

¶17 There have been other efforts to intervene in other criminal actions. Without discussion, the courts permitted intervention by the foster mother of a murder victim in *State v. Schaupp*, 111 Wn.2d 34, 757 P.2d 970 (1988). There the prosecutor had reduced the charge from second degree murder to second degree manslaughter after telling the trial judge that three witnesses to the crime were unavailable. The court accepted the plea and scheduled the matter for sentencing. *Id.* at 35-36. The victim's foster mother retained counsel and sought to set aside the guilty plea. After appointing a special prosecutor and conducting a hearing, a trial judge set aside the guilty plea on the basis that the prosecutor's statement was false. The defendant went to trial on the original murder charge; he was convicted of first degree manslaughter. *Id.* at 36-37.

¶18 The Washington Supreme Court reversed the conviction and reinstated the guilty plea. *Id.* at 42. The court's

analysis focused on the standards for setting aside a guilty plea and did not discuss the ability of the foster mother to intervene in the case. *Id.* at 38-41.

¶19 A very different fact pattern was presented in *State v. Cloud*, 95 Wn. App. 606, 976 P.2d 649 (1999). There a retained attorney was discharged after a jury had convicted his client of first degree murder. New counsel moved to set aside the verdict, alleging ineffective assistance by the original attorney. *Id.* at 608-610. The original attorney was permitted to intervene in order to maintain his reputation. Working with two other attorneys, he effectively defended against his former client's motion. The trial court concluded that the client had not established ineffective assistance and denied the motion. *Id.* at 610-611.

¶20 On appeal, Division One of this court reversed and remanded for a new hearing on the motion. *Id.* at 615-616. The court distinguished *Bianchi* as dealing with pretrial intervention by the press. *Id.* at 612 n.3. Focusing on the attorney-client relationship, the court reasoned that allowing former counsel to intervene against the former client would "undercut the most fundamental value of the attorney-client relationship for future criminal defendants." *Id.* at 614. The court also concluded that the intervention was prejudicial because the attorney produced significant damaging evidence against the client. *Id.* at 615-616.

¶21 Mr. Mendez relies upon *Bianchi* and *Cloud* to argue that there is no authority for any third party to ever intervene in a criminal case. He reads too much into those decisions. First, no case has read *Bianchi* as a *per se* prohibition on intervention in a criminal case. *Cloud* was decided on the basis of public policy concerns involving the attorney-client relationship. *Schaupp* did not even address the ability of the foster mother to have intervened in the trial court. Moreover, *Bianchi* is factually distinguishable from this case. The *Bianchi* case was just beginning its courtroom journey; Mr. Mendez's case was already complete. The policy concerns about disruption that influenced *Bianchi* are not presented in a closed case such as this.

¶22 More fundamentally, the legal landscape has changed significantly since *Bianchi* decided that there was no "rule, statute, or precedent" that authorized intervention in a criminal case. 92 Wn.2d at 92. Now, all three bases authorize limited third party involvement in different aspects of criminal cases.

¶23 *Statute*. A *Bianchi*-based challenge to former RCW 9.94A.145 (1991),[5] which permitted crime victims to enforce restitution ordered in a criminal case, was presented by *State v. Wiens*, 77 Wn. App. 651, 894 P.2d 569, *review denied*, 127 Wn.2d 1021 (1995). Because a statute expressly authorized the victims to act in the criminal case, the court distinguished *Bianchi* and found it did not bar the victim's actions. *Id.* at 655. The court also noted that the disruption feared by *Bianchi* would not be an issue in a postsentencing proceeding of the type anticipated by the statute. *Id.*

¶24 *Rule*. In 1989, the Washington Supreme Court adopted GR 15, applicable to both civil and criminal cases, for the purpose of creating "a uniform procedure for the destruction, sealing, and redaction of court records." GR 15(a). The sealing procedure is set forth in GR 15(c), which in relevant part[6] states:

**(c) Sealing or Redacting Court Records.**

(1) In a civil case, the court or any party may request a hearing to seal or redact the court records. In a criminal case or juvenile proceeding, the court, any party, or any interested person may request a hearing to seal or redact the court records. Reasonable notice of a hearing to seal must be given to all parties in the case. In a criminal case, reasonable notice of a hearing to seal or redact must also be given to the victim, if ascertainable, and the person or agency having probationary, custodial, community placement, or community supervision over the affected adult or juvenile. No such notice is required for motions to seal documents entered pursuant to CrR 3.1(f) or CrRLJ 3.1(f).

---

[5] The provision is now codified at RCW 9.94A.753(9).

[6] The deleted sections of GR 15(c) deal with the court clerk's response to sealing or redaction orders.

(2) After the hearing, the court may order the court files and records in the proceeding, or any part thereof, to be sealed or redacted if the court makes and enters written findings that the specific sealing or redaction is justified by identified compelling privacy or safety concerns that outweigh the public interest in access to the court record. Agreement of the parties alone does not constitute a sufficient basis for the sealing or redaction of court records. Sufficient privacy or safety concerns that may be weighed against the public interest include findings that:

(A) The sealing or redaction is permitted by statute; or

(B) The sealing or redaction furthers an order entered under CR 12(f) or a protective order entered under CR 26(c); or

(C) A conviction has been vacated; or

(D) The sealing or redaction furthers an order entered pursuant to RCW 4.24.611; or

(E) The redaction includes only restricted personal identifiers contained in the court record; or

(F) Another identified compelling circumstance exists that requires the sealing or redaction.

(3) A court record shall not be sealed under this section when redaction will adequately resolve the issues before the court pursuant to subsection (2) above.

¶25 The first two sentences note a significant difference between civil and criminal cases. Only parties or the court may move to seal a civil action, and only parties are entitled to notice of the motion. In criminal cases, "interested persons" may move to seal and notice must be given to various nonparties. These differences recognize that formal intervention is available in civil cases. *See* CR 24. While it is not available in criminal cases, the text of the rule recognizes that nonparties still can be involved in some manner.

¶26 Also of import is the unsealing rule, GR 15(e), which provides:

**(e) Grounds and Procedure for Requesting the Unsealing of Sealed Records.**

(1) Sealed court records may be examined by the public only after the court records have been ordered unsealed pursuant to

this section or after entry of a court order allowing access to a sealed court record.

(2) *Criminal Cases.* A sealed court record in a criminal case shall be ordered unsealed only upon proof of compelling circumstances, unless otherwise provided by statute, and only upon motion and written notice to the persons entitled to notice under subsection (c)(1) of this rule except:

(A) If a new criminal charge is filed and the existence of the conviction contained in a sealed record is an element of the new offense, or would constitute a statutory sentencing enhancement, or provide the basis for an exceptional sentence, upon application of the prosecuting attorney the court shall nullify the sealing order in the prior sealed case(s).

(B) If a petition is filed alleging that a person is a sexually violent predator, upon application of the prosecuting attorney the court shall nullify the sealing order as to all prior criminal records of that individual.

(3) *Civil Cases.* A sealed court record in a civil case shall be ordered unsealed only upon stipulation of all parties or upon motion and written notice to all parties and proof that identified compelling circumstances for continued sealing no longer exist, or pursuant to RCW 4.24 or CR 26(j). If the person seeking access cannot locate a party to provide the notice required by this rule, after making a good faith reasonable effort to provide such notice as required by the Superior Court Rules, an affidavit may be filed with the court setting forth the efforts to locate the party and requesting waiver of the notice provision of this rule. The court may waive the notice requirement of this rule if the court finds that further good faith efforts to locate the party are not likely to be successful.

(4) *Juvenile Proceedings.* Inspection of a sealed juvenile court record is permitted only by order of the court upon motion made by the person who is the subject of the record, except as otherwise provided in RCW 13.50.010(8) and 13.50.050(23). Any adjudication of a juvenile offense or a crime subsequent to sealing has the effect of nullifying the sealing order, pursuant to RCW 13.50.050(16).

¶27 GR 15(e)(1) again recognizes that in a civil case only parties may move to unseal and only parties are entitled to

notice. GR 15(e)(2) does not expressly state who may move to unseal in a criminal case, but notice still must be given to parties and the same nonparties who are entitled to notice of the motion to seal.

¶28 These provisions establish that nonparties to civil and criminal cases may have interests that can be protected. In a civil case, the interested person must formally intervene and obtain the status of a party. It is not possible to appear as an additional party in a criminal case, but "interested persons" may become involved to the limited extent authorized by the rule.

¶29 *Precedent.* Third party "intervention" in a criminal case is also authorized by article I, sections 10 and 22 of the Washington Constitution. In a series of cases, our courts repeatedly have recognized that courtroom proceedings cannot be closed to the public without first giving everyone present the opportunity to be heard. *State v. Momah,* 167 Wn.2d 140, 149, 217 P.3d 321 (2009); *In re Pers. Restraint of Orange,* 152 Wn.2d 795, 806, 100 P.3d 291 (2004); *State v. Bone-Club,* 128 Wn.2d 254, 258-259, 906 P.2d 325 (1995); *Ishikawa,* 97 Wn.2d at 38. The failure to engage in the required analysis and inquire of the public results in reversal. *State v. Strode,* 167 Wn.2d 222, 227-229, 217 P.3d 310 (2009).[7] We believe there is no practical difference between allowing the public to challenge a courtroom closure request and allowing the public to challenge a sealing order.

¶30 All of this authority, "rule, statute, or precedent" that did not exist at the time of *Bianchi,* undercuts Mr. Mendez's argument that *Bianchi* imposed a *per se* rule against third party involvement in a criminal case. While not amounting to the party status accorded intervenors in a civil case, third-party participation in criminal cases has been authorized in discrete situations. The trial court correctly recog-

---

[7] Third parties also have been (involuntarily) brought into criminal cases. *E.g., State v. Breazeale,* 144 Wn.2d 829, 31 P.3d 1155 (2001) (Washington State Patrol subject to contempt action for not honoring court order to vacate judgment).

nized that GR 15 permitted the *Yakima Herald-Republic* to petition to unseal the budget records in this case.

¶31 Mr. Mendez also argues that the public policy prong of *Bianchi*, the concern that third-party intervention might disrupt the criminal trial, militates against "intervention" in this case. Instead, he argues that the *Yakima Herald-Republic* should have filed a separate action as occurred in *Kurtz* and *Ishikawa*. We do not see any practical difference to the trial court if a third party seeks to unseal a record via the existing criminal case or in a new separate proceeding. There are several significant practical differences to the criminal defendant, however, and we think that third parties should be encouraged to act in the criminal case rather than pursue their own new action.

¶32 First, we agree with Division One that the *Bianchi* court's concerns about third-party involvement disrupting a " 'pending' " criminal case are not present in a closed case such as this one. *Wiens*, 77 Wn. App. at 654-655. The policy concerns present in *Bianchi* simply do not exist when the criminal conviction is final.[8] Second, permitting the third party to seek unsealing in the criminal case would allow the defendant to be heard and take part in the action. The criminal defendant is not a necessary party to a mandamus action. *Ishikawa*, 97 Wn.2d at 35. If the *Yakima Herald-Republic* had filed a mandamus action against the trial judge, Mr. Mendez might not have been permitted to intervene. *Id.* Third, an indigent has no right to counsel at public expense in a civil proceeding. RCW 10.73.150 (detailing when appellate counsel is available for indigents); *In re Marriage of King*, 162 Wn.2d 378, 174 P.3d 659 (2007) (no appointed counsel for dissolution trial proceedings); *Hous. Auth. v. Saylors*, 87 Wn.2d 732, 557 P.2d 321 (1976) (no appointed counsel for civil appeal). Thus, even if intervention were permitted, the defendant might not be represented by counsel.

---

[8] A conviction that was not yet final due to an appeal might present different disruption or disclosure concerns. We do not address that situation here.

¶33 While third parties may prefer to bring a separate action for tactical reasons, they are not required to do so for public policy reasons. An indigent criminal defendant is better served when a sealing order is challenged in the criminal case where the order was entered. This is the simplest and most efficient mechanism for review of a sealed document and is also the process most likely to result in full litigation of the merits because the defendant will be taking part.[9]

¶34 For all of these reasons, we conclude that the trial court had authority to hear the *Yakima Herald-Republic*'s motion to unseal the budget records. There was no error.

*Open Administration of Justice*

¶35 Mr. Mendez argues that even if the court had authority to hear the motion, it should not have unsealed the information because the records did not fall within the scope of the open administration of justice requirement of our constitution. The sealed documents were "court records" subject to disclosure under our court rules.

¶36 Appellant relies upon a passage from *Dreiling v. Jain*, 151 Wn.2d 900, 93 P.3d 861 (2004). That case involved a shareholder derivative suit that had been referred to a special litigation committee (SLC). After reviewing the discovery in the case, the SLC recommended that the action be dismissed. The corporation then moved to dismiss and filed some discovery information under seal in support of the motion. *Id.* at 904-905. A newspaper was permitted to intervene; it sought disclosure of all information submitted to the SLC. *Id.* at 905. The trial court required the SLC to list the nature of documents it was sealing and to disclose any information it did not seal. *Id.* at 906-907. The question in that case was whether the trial court had applied the appropriate standard for sealing the records that had been presented in support of the motion to dismiss. *Id.* at 907.

---

[9] Whether third party participation in a criminal case should be termed "intervention" is a debatable question since authorized involvement is typically limited to specific actions and is not the broader participation found in the civil rules.

¶37 In attempting to characterize the nature of the motion to dismiss the derivative suit, the court began its analysis by distinguishing between discovery and dispositive motions, with the court noting that "mere discovery" can be sealed for "good cause shown." *Id.* at 909; CR 26(c). The court then distinguished between discovery and materials submitted to a court in support of a motion. *Id.* at 909-910. It then stated:

> As this information does not become part of the court's decision-making process, article I, section 10 does not speak to its disclosure. However, the same cannot be said for materials attached to a summary judgment motion. Summary judgment effectively adjudicates the substantive rights of the parties, just like a full trial. Accordingly, when previously sealed discovery documents are attached in support of a summary judgment motion, they lose their character as raw fruits of discovery. Such documents may not be kept from public view "without some overriding interest" requiring secrecy.

*Id.* at 909-910. The court went on to characterize the motion to dismiss as the equivalent of a summary judgment motion and determined that the trial court had been required to apply the *Ishikawa* factors before sealing the documents attached to the motion to dismiss. *Id.* at 910, 913-915. Since the trial court had not applied the correct standard, the matter was remanded for application of the *Ishikawa* analysis. *Id.* at 915, 918-919.

¶38 Mr. Mendez relies upon the first three sentences of the above-quoted *Dreiling* passage and argues that unless a document is submitted to a trial judge for consideration in a dispositive motion, it is not subject to the commands of article I, section 10. Br. of Appellant at 9-10. We disagree. In context, the *Dreiling* court was simply distinguishing the sealing rules applicable to discovery that is not presented to a court and discovery that does make its way for consideration by a court. The former case is subject to the standards of CR 26, while the latter is governed by article I, section 10 and the *Ishikawa* analysis.

¶39 The court addressed a related issue in *Rufer v. Abbott Laboratories*, 154 Wn.2d 530, 114 P.3d 1182 (2005). There the question was whether information filed with a court, but not considered as part of a dispositive motion, was subject to sealing. *Id.* at 540. The court concluded that documents filed with the trial court were subject to sealing or unsealing under the more stringent *Ishikawa* analysis. *Id.* at 546-549.

¶40 While *Dreiling* and *Rufer* address documents placed in the court's file and thereby lend some support to the argument that public access is dependent upon whether or not a trial judge used the material to make a decision, Mr. Mendez's focus is too narrow. Those cases involved the standards for sealing materials obtained during discovery. Trial courts consider many items that were not originally discovery materials, including the documents at issue here. Instead, the relevant authority is GR 31(c)(4). It states in full:

> "Court record" includes, but is not limited to: (i) Any document, information, exhibit, or other thing that is maintained by a court in connection with a judicial proceeding, and (ii) Any index, calendar, docket, register of actions, official record of the proceedings, order, decree, judgment, minute, and any information in a case management system created or prepared by the court that is related to a judicial proceeding. Court record does not include data maintained by or for a judge pertaining to a particular case or party, such as personal notes and communications, memoranda, drafts, or other working papers; or information gathered, maintained, or stored by a government agency or other entity to which the court has access but which is not entered into the record.

This definition is used by GR 15 to divine what records are subject to sealing and unsealing. GR 15(b)(2), (c), (e).[10]

¶41 The billing documents in question here are "court records" under this definition. They appear to be documents

---

[10] The parties do not contend that the common law right of access to court files applies to these records. *Nast v. Michels*, 107 Wn.2d 300, 303-304, 730 P.2d 54 (1986); *City of Federal Way v. Koenig*, 167 Wn.2d 341, 217 P.3d 1172 (2009).

or some "other thing maintained by a court in connection with a judicial proceeding." Mr. Mendez apparently believed the billing documents were "court records" or he would not have sought to seal them in the first place. If they were "court records" for sealing purposes, they must also be "court records" for purposes of unsealing.[11]

¶42 The usage-based standard for distinguishing discovery materials from court records is not applicable to materials that were generated apart from the discovery process. Instead, the definition of "court records" in GR 31(c)(4) applies to the materials at issue in this case. We reject Mr. Mendez's argument and conclude that these billing documents were "maintained by a court in connection with a judicial proceeding."

¶43 The trial court did not err by entertaining the motion to unseal these court records.

*Balancing of Interests*

¶44 Mr. Mendez also argues that even if the court could have granted the unsealing request, it erred by doing so. We conclude that the trial court considered the proper factors and did not abuse its discretion by unsealing the redacted documents.

■ ¶45 When a trial court applies the proper legal analysis, its decision on a sealing motion is reviewed for abuse of discretion. *Dreiling*, 151 Wn.2d at 907. Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶46 The trial court balanced "Mr. Mendez's constitutional interest of a fair trial and right to counsel with the press and public's constitutional right to open justice" when it entered its order to unseal the records. In light of this statement and Mr. Mendez's arguments on appeal, we will

---

[11] If the documents were not court records, they should not have been sealed in the first place. GR 15 applies only to court records and does not extend to records held by others. *Breazeale*, 144 Wn.2d at 841.

assume that the original sealing order was entered to protect the defendant's right to a fair trial and the right to counsel.[12]

¶47 Although the *Ishikawa* factors are written from the perspective of a courtroom closure, they can be easily adapted to review a decision to unseal documents.[13] The first factor is the proponent's showing of a compelling need for closure (sealing). *Ishikawa*, 97 Wn.2d at 37-38. In the context of a decision to unseal, because the propriety of the showing of compelling need is not at issue, we believe that this factor only requires the trial court to correctly identify the original reasons for sealing the documents. That was done here.

¶48 The second factor is whether the public was given the right to be heard. *Ishikawa*, 97 Wn.2d at 38. This backward-looking factor likewise does not squarely fit into an unsealing motion action. It probably is best addressed by ensuring that notice is properly given to the parties and others entitled to notice under GR 15. Where, as here, a third party brings an unsealing motion and gives notice under the rule, we believe this factor is satisfied.

¶49 The third *Ishikawa* factor involves whether the court used the least restrictive means that still is effective in protecting the threatened interests. 97 Wn.2d at 38. Where a criminal defendant's Sixth Amendment rights are at stake, the burden remains on those opposed to the closure. *Id.* In this context, we believe that means the trial court must consider whether limitations on unsealing are necessary to protect the defendant's constitutional rights. The trial court did do that here when it ordered some redaction to ensure the attorney work-product privilege was preserved.

---

[12] As previously noted, the record on appeal does not include the sealing order. Neither of the respondents challenges the original decision to seal the records.

[13] The Washington Supreme Court has not had occasion to review a trial court's application of the five *Ishikawa* factors to a decision to unseal records, although it did affirm the disclosure order in *Rufer* because the trial court had used the compelling interest standard in its analysis. 154 Wn.2d at 551.

¶50 The fourth factor requires the trial court to weigh the competing interests of the defendant and the public and do so with specificity. *Id.* The court did identify the factors it was weighing. While perhaps more specific findings could have been articulated, the court's reasoning is sufficient to allow appellate review.

¶51 The fifth factor is whether the order was properly limited in scope to achieve its purpose and lasts no longer than necessary. *Id.* at 39. In the context of a sealing order, we believe this factor requires the trial court to assess whether the existing order is still needed.

¶52 Mr. Mendez argues that the court's balancing should result in no disclosure of billing information. He primarily relies upon the decision in *United States v. Gonzales*, 150 F.3d 1246 (10th Cir. 1998), *cert. denied*, 525 U.S. 1129 (1999). There a newspaper sought detailed information concerning the expenses incurred in providing indigent defense for 23 codefendants in gang-related prosecutions. The trial court provided total expense information for each defendant at sentencing, and ruled that it would provide detailed records of supporting documentation at the sentencing of the last defendant. *Id.* at 1253.

¶53 The Court of Appeals determined that there were no First Amendment, statutory, or common law grounds for access to the information. *Id.* at 1250-1251. The court ruled that the trial court had discretion to release the total amount information. *Id.* at 1254-1264. The court also ruled that the trial court had erred in allowing eventual access to the detailed information. This aspect of the ruling was based on the fact that the trial court erred in not realizing that the attorney-client privilege extended beyond death and releasing the detailed information would require extensive efforts to redact privileged material as well as invade the privacy of others. *Id.* at 1261, 1264-1266.

¶54 *Gonzales* is not particularly helpful here because this case involves our state constitution and court rules rather than the First Amendment and a federal statutory framework for compensating indigent counsel. Washing-

ton's constitution provides a broad right of public access to court proceedings. *Rufer*, 154 Wn.2d at 542; *Dreiling*, 151 Wn.2d at 903-904. It is our state framework that governs here.

¶55 As in *Rufer*, the ultimate question is whether the trial court correctly balanced the competing interests at stake. 154 Wn.2d at 550-551. The trial court identified two rights at issue for Mr. Mendez: his right to a fair trial and his right to counsel. Against those rights was balanced the public's constitutional right to open justice.

¶56 The trial court correctly recognized that Mr. Mendez's interest in a fair trial was no longer in play. He had pleaded guilty and been sentenced. His conviction was final. His only remaining interest was in his right to counsel. The court protected that right by ordering redactions to protect privileged communications and attorney work product. This ruling is in keeping with the command of the fifth *Ishikawa* factor, which requires that a closure (sealing) be no broader in scope and duration than is necessary to protect the right in question.

¶57 The trial court accurately assessed the situation. The identity of an attorney's client and the fees charged for representation are not privileged information. *Seventh Elect Church in Israel v. Rogers*, 102 Wn.2d 527, 531-532, 688 P.2d 506 (1984); *R.A. Hanson Co. v. Magnuson*, 79 Wn. App. 497, 501-502, 903 P.2d 496 (1995), *review denied*, 129 Wn.2d 1010 (1996). Thus, no privilege attached to the billing records themselves. Similarly, the fact that the attorney and the client conferred on a case does not implicate the attorney-client relationship. *Seventh Elect Church*, 102 Wn.2d at 531. However, identifying the subject matter of the conversation would present a privilege claim. *Id.* at 532. Similarly, interviewing known and previously identified witnesses would not implicate the attorney-client or work product privileges, while interviews with witnesses discovered by the defense would constitute work product. The trial court, working with defense counsel, can protect privileged information by redacting names and/or informa-

tion identifying the subject matter of privileged communications. While Mr. Mendez decries the expense and time commitment that could be required for redaction, that is a consequence of Washington's constitutional preference for open courts. Administrative inconvenience is not a basis for denying a statutory right to public information. *Zink v. City of Mesa*, 140 Wn. App. 328, 337, 166 P.3d 738 (2007) (discussing Public Records Act). It most certainly cannot be a basis to deny a constitutional right.

¶58 Mr. Mendez nonetheless argues that revealing any information is unfair because private counsel would not have to do so and results in putting indigent defendants as a class in a different situation than those capable of retaining their own counsel. Those concerns are not justified. First, the issue in a sealing or closure situation is the effect on the defendant's trial, not the effect on other unrelated cases in the future. *Ishikawa*, 97 Wn.2d at 37-38. It is the particularized showing of need that provides the compelling interest in limiting the public's right to open justice. He does not have standing to complain about how unknown others may be affected in some other time.

¶59 Second, the fact that retained counsel typically do not have to disclose information about their case practices flows from relevance rather than privilege. In the rare case where the information is relevant, it can be discovered. *Seventh Elect Church*, 102 Wn.2d at 531-532 (counsel required to answer questions about fee arrangements and billings to client); *R.A. Hanson*, 79 Wn. App. at 501-502 (counsel required to answer if he passed money from client to attorney for third party). All clients (and their counsel) are treated the same in this regard. The fact that the information can be obtained easier and without cause for publicly-funded counsel does not infringe upon any rights of the client. An indigent's counsel's work product and privileges are protected to the same extent as that of retained counsel.

¶60 The opening paragraph of *Dreiling* eloquently addresses the public policy of this state as embodied in article I, section 10:

The open operation of our courts is of utmost public importance. Justice must be conducted openly to foster the public's understanding and trust in our judicial system and to give judges the check of public scrutiny. Secrecy fosters mistrust. This openness is a vital part of our constitution and our history. The right of the public, including the press, to access trials and court records may be limited only to protect significant interests, and any limitation must be carefully considered and specifically justified.

151 Wn.2d at 903-904.

¶61 This important policy, incorporated in our constitution in 1889, is what must be weighed against the defendant's particular interests. Those interests can outweigh the public interest for a time, but when the protections are no longer needed, the secrecy invoked to insure the defendant a fair trial must give way except where shown to still be necessary.

## CONCLUSION

¶62 The trial court balanced the competing interests at issue here and ordered disclosure subject to recognized privileges, including work product. It had a very tenable basis for ruling as it did. There was no abuse of discretion.

¶63 The judgment of the trial court is affirmed.

KULIK, C.J., and SWEENEY, J., concur.

Review granted at 172 Wn.2d 1004 (2011).