[No. 37593-8-I.    Division One.    December 23, 1996.]

L.H., *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

M.F., *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

M.L., *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

*Michael B. King, Linda E. Clapham, Tammy L. Lewis,* and *Lane Powell Spears Lubersky,* for appellants.

*Christine O. Gregoire, Attorney General,* and *Nancy A. Kellogg, Assistant,* for respondent.

*Rebecca J. Roe* on behalf of King County Sexual Assault Center and Washington Coalition of Sexual Assault Programs, amici curiae.

GROSSE, J. — This consolidated case concerns three individuals, abused as children while residents of states other than Washington, who repressed memories of the abuse. Each one, after attaining majority, moved to the state of Washington, and underwent counseling, during which they consciously recalled the abuse. Each applied for benefits under RCW 7.68, Washington's crime victims' compensation act (hereinafter referred to as the CVCA), as the "victim" of a criminal act committed "against a resident of the State of Washington." The three individuals contend they are eligible because their injury occurred when they recovered their memories, at a time when they were Washington State residents. We hold that the residency requirement must be satisfied at the time the criminal perpetrated the act. The appellants are not entitled to benefits even though their injuries became manifest while they were Washington residents. Therefore, we affirm the superior court.

The parties stipulated to the following facts.

### *L.H.*

L.H.'s grandfather assaulted her on several occasions between 1950 and 1963. The assaults took place in California, and possibly Oregon, up until L.H. became 13 years old, but not while a Washington State resident. L.H. repressed memory of the events. She became a Washington resident in 1978, and became conscious of the assaults

during counseling in 1990. L.H. applied for benefits with Washington's Department of Labor and Industries (the Department) under the CVCA. The Department denied the application, an industrial appeals judge (IAJ) held hearings, and the IAJ issued a proposed decision and order affirming the Department. The Board of Industrial Insurance Appeals (BIIA) denied review, thus adopting the proposed decision and order as its final order. RCW 51.52.106.

### *M.F.*

When M.F. was between 1 and 11 years old, her father and brother assaulted her. The assaults occurred in Connecticut between 1963 and 1974, while M.F. was not a Washington State resident, and she repressed her memory. In 1989, M.F. became a Washington State resident. During counseling, she became conscious of the assaults. M.F. applied for benefits under the CVCA. The Department denied the application, an IAJ held hearings, and the IAJ issued a proposed order and decision affirming the Department. The BIIA denied review.

### *M.L.*

M.L. was born in 1943 and suffered abuse between 1943 and 1957. M.L. was not a resident of Washington State at the time she was abused, and the acts were not perpetrated in Washington State. M.L. repressed memory of the events. In 1970, M.L. moved to Washington State. During psychotherapy in 1990, M.L. became conscious of the assaults. She applied to the Department for CVCA benefits. The Department denied the application, an IAJ held hearings, and the IAJ issued a proposed order and decision affirming the Department. The BIIA denied review.

L.H., M.F., and M.L., who will be collectively referred to as "the applicants," each appealed to superior court. The superior court affirmed the BIIA, and the applicants appealed to the State Supreme Court. The Supreme Court

transferred the consolidated case to the Court of Appeals, Division I.

We apply the usual standard of review.[1]

## I.

## THE CVCA

The issue is whether the applicants are entitled to benefits under the CVCA, the qualifying provision of which requires injury resulting from a criminal act:

> Each victim injured as a result of a criminal act, including criminal acts committed between July 1, 1981, and January 1, 1983, or the victim's family or dependents in case of death of the victim, are entitled to benefits in accordance with this chapter, subject to the limitations under RCW 7.68.015. . . .

RCW 7.68.070(2) (1995).[2] The statute's definition of "victim" refers back to its definition of "criminal act."[3]

> "Criminal act" means an act committed or attempted in this state which is punishable as a felony or gross misdemeanor under the laws of this state, or an act committed outside the state of Washington against a resident of the state of Washington which would be compensable had it occurred inside this state; and the crime occurred in a state which does not have a crime victims compensation program, for which the victim is eligible as set forth in the Washington compensation law except as follows: . . .

RCW 7.68.020(2). For ease of reference, we will refer to the two distinct classifications in RCW 7.68.020(2) as the first clause (i.e., "an act committed or attempted in this state") and the second clause (i.e., "an act committed

---

[1]Appeals under the CVCA are governed by the Administrative Procedure Act, RCW 34.05. RCW 7.68.110. This court will grant relief if the BIIA erroneously interpreted or applied the law. RCW 34.05.570(3)(d).

[2]The Legislature's 1996 amendment to RCW 7.68.070(2) is irrelevant to this appeal. See LAWS OF 1996, ch. 122, § 4.

[3]RCW 7.68.020(3) provides: " 'Victim' means a person who suffers bodily injury or death as a proximate result of a criminal act of another person, . . ."

outside the state of Washington against a resident of the state of Washington"). The crimes in this case were not committed in Washington State, making the first clause inapplicable. The question is whether they were acts "committed outside the state of Washington against a resident of the state of Washington," thereby affording the applicants benefits.

When RCW 7.68.020(2) speaks of the "act committed," it refers to the perpetrator's conduct. Because the timing of the *act* is determined with reference to the perpetrator's conduct, the Washington State residency at the time of the crime is a prerequisite to benefits under the statute's second clause. The second clause does not, as applicants contend, determine benefits with reference to the date of injury. We do not *construe* this statute, because we hold that its meaning is clear when the word "resident" is read in context with the words "act committed."[4] The applicants in this case do not qualify for benefits because they were not residents of Washington State at the time the criminals perpetuated the criminal conduct. And the applicants' respective decisions to move to Washington State, deliberate or serendipitous, do not entitle them to benefits for criminal conduct preceding the change in residency.

The applicants, however, contend that the CVCA's accrual provision, relating to childhood victims who repress conscious memory, expands the pool of beneficiaries. *See* RCW 7.68.060(3). RCW 7.68.060 specifies the time period during which an application for benefits must be filed, and proscribes compensation when an application is untimely.[5] The statute specifically addresses accrual of the right to

---

[4]Courts construe ambiguous statutes, but enforce clear statutes according to their terms. *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996); *Food Servs. of Am. v. Royal Heights, Inc.*, 123 Wn.2d 779, 784, 871 P.2d 590 (1994). The court focuses on the statute's text, read as a whole, to determine the absence or existence of ambiguity. *Whatcom County v. City of Bellingham*, 128 Wn.2d at 546. A particular word standing alone may be ambiguous. Read in context, that word, and the statute, may nevertheless be clear, rendering judicial construction inappropriate.

[5]As amended in 1996, RCW 7.68.060(1)(a) provides:

benefits for victims of childhood criminal acts the memory of which have been repressed:

> Because victims of childhood criminal acts may repress conscious memory of such criminal acts far beyond the age of eighteen, the rights of adult victims of childhood criminal acts shall *accrue* at the time the victim discovers or reasonably should have discovered the elements of the crime. In making determinations as to reasonable time limits, the department shall give greatest weight to the needs of the victim.

RCW 7.68.060(3) (emphasis added). Accrue means acquired, matured, vested, or was created. BLACK'S LAW DICTIONARY 19 (5th ed. 1979); WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY 14 (2d ed. 1977). Thus, RCW 7.68.060(3) addresses *when* the applicants have a right to demand compensation. The accrual provisions do not define the underlying elements of eligibility. *Cf.* RCW 7.68.070(2), and RCW 7.68.020. By addressing sexual assault and repressed memory in several parts of the statute, the Legislature demonstrated that it could have made specific provision for this type of case.[6]

The applicants are not entitled to benefits. Because they were not residents of Washington State when the criminal conduct occurred, and the conduct occurred outside

---

An application for benefits is not received by the department within two years after the date the criminal act was reported to a local police department or sheriff's office or the date the rights of dependents or beneficiaries accrued, unless the director has determined that "good cause" exists to expand the time permitted to receive the application. "Good cause" shall be determined by the department on a case-by-case basis and may extend the period of time in which an application can be received for up to five years after the date the criminal act was reported to a local police department or sheriff's office or the date the rights of dependents or beneficiaries accrued . . . .

LAWS OF 1996, ch. 122.

[6]*See* RCW 7.68.170 (examination costs of sexual assault victims paid by state); RCW 7.68.070(12) (victims of sexual assault entitled to receive counseling, in addition to other benefits); RCW 7.68.060(3) (rights of adult victims of childhood criminal acts accrue at time of discovery).

Washington State, the applicants were not victims of a criminal act for purposes of the CVCA.

## II.
## CONSTITUTIONAL RIGHT TO TRAVEL

The applicants next contend that the residency requirement in RCW 7.68.020(2)'s second clause unconstitutionally burdens interstate travel.[7]

The constitutional right to travel, as related to denial of that right to a limited class of persons, inheres in the equal protection clause of the Fourteenth Amendment, which provides:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1. The nature of this country's union, and constitutional precepts of personal liberty, dictates that all citizens be free to travel among the states, including changing their residency, uninhibited by unreasonable burdens. *Shapiro v. Thompson*, 394 U.S. 618, 629-30, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969). A statute which establishes a **durational** residency requirement, the effect of which is to create two classes of residents otherwise indistinguishable, may impermissibly burden the constitutional right to interstate travel, thereby denying equal protection of the laws. *Cf. Shapiro v. Thompson*, 394 U.S. at 638 (Aid to Families with Dependent Children benefits), with *McCarthy v. Philadelphia Civil Serv. Comm'n*, 424 U.S. 645, 647, 96 S. Ct. 1154, 47 L. Ed. 2d 366 (1976) (continuing-residence requirement as condition of municipal employment).

---

[7]The applicants also contend that victims suffering from repressed memory syndrome, or victims of childhood abuse, have an immutable characteristic, requiring strict scrutiny. [Applicants'] Opening Br. at 52-53. The applicants' conditions are not immutable.

On the other hand, a bona fide residence requirement which conditions receipt of a benefit on the fact of residency does not burden interstate travel. *Martinez v. Bynum*, 461 U.S. 321, 328, 103 S. Ct. 1838, 75 L. Ed. 2d 879 (1983). "A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents." *Martinez*, 461 U.S. at 328 (upholding bona fide residency requirement for tuition-free education).[8]

The CVCA's residency requirement is limited in application because the act provides benefits to all persons, regardless of residency, injured by a criminal act occurring within Washington State's borders.[9] RCW 7.68.070(2), RCW 7.68.020(2). The residency requirement contained in the second clause of RCW 7.68.020(2) requires residency only at the time the criminal act is perpetrated; it does not restrict the freedom to change residency afterwards. *Cf. Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 900 n.1, 106 S. Ct. 2317, 90 L. Ed. 2d 899 (1986) (striking down civil service employment preference for veterans, granted only to current residents who were also New York residents when they enlisted). Because the statute does not condition benefits on current residency, but rather on residency at the time of the act, the residence requirement is bona fide and does not burden interstate travel. The CVCA's residency requirement does not violate the Fourteenth Amendment's equal protection clause.

We affirm the superior court in all three cases.

COLEMAN and COX, JJ., concur.

---

[8]*See also Nunez v. Autry*, 884 S.W.2d 199 (Tex. Ct. App. 1994) (bona fide residency requirement for insurance guaranty fund benefits does not violate equal protection); *Holly v. Maryland Auto. Ins. Fund*, 29 Md. App. 498, 349 A.2d 670, 673 (1975) (conditioning eligibility for unsatisfied judgment fund benefits on residency does not burden right to travel); and *Davis v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 561 A.2d 169, 169 (D.C. 1989).

[9]Benefits are not based on financial need, and, by statute, are a secondary source of compensation. *Standing v. Department of Labor & Indus.*, 92 Wn.2d 463, 468, 598 P.2d 725 (1979); RCW 7.68.130.

Reconsideration denied June 3, 1997.

Review denied at 133 Wn.2d 1018 (1997).