FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 28, 2025

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 28, 2025

SARAH R. PENDLETON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 103338-9 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| LESTER P. THOMPSON JR., | ) | |
| | ) | Filed  August 28, 2025 |
| | ) | |

MUNGIA, J.—The issue raised in this appeal is whether the Court of Appeals has the authority to allow a nonparty to intervene in a criminal appeal when that nonparty was allowed to intervene at trial and the appellate intervention is limited to the same issue addressed below.  We hold that the Court of Appeals has that authority.

Lester Thompson Jr., the defendant, moved to subpoena the medical records of decedent Destinie Gates-Jackson, the victim.  Jeri Gates, as survivor of Ms. Gates-Jackson,[1] intervened and objected.  Mr. Thompson did not object to Ms. Gates' intervention at the trial court and, in fact, agreed that Ms. Gates had the right to

---

[1] The privacy rights of Ms. Gates-Jackson survive in her representative, Ms. Gates, her mother, under the Health Insurance Portability and Accountability Act of 1996, 45 C.F.R. § 164.502(f), (g)(1).

oppose his motions. The trial court denied Mr. Thompson's motions to obtain the records.

Mr. Thompson was convicted.

On appeal, Mr. Thompson raised four assignments of error with the first being, "The trial court erred in refusing to issue subpoenas for the decedent's medical records." Br. of Appellant, *State v. Thompson*, No. 85515-8-I, at 2 (Wash. Ct. App. Feb. 16, 2024). Ms. Gates moved to intervene at the appellate level to address solely that issue. The Court of Appeals granted the motion over Mr. Thompson's objection.

Mr. Thompson sought this court's review, arguing that the Court of Appeals erred by allowing Ms. Gates to intervene.

We hold that where a trial court has allowed a nonparty to intervene, an appellate court has the discretion to allow that nonparty to intervene on appeal, solely on the issues the nonparty addressed in the trial court.

I
### THE TRIAL COURT ALLOWED MS. GATES TO INTERVENE TO PROTECT THE CONFIDENTIALITY OF MEDICAL RECORDS

A. <u>Lester Thompson Was Charged with Murdering Destinie Gates-Jackson</u>

Lester Thompson Jr. and Destinie Gates-Jackson had a long-term intimate relationship. In 2013, Mr. Thompson pleaded guilty to charges stemming from kidnapping and strangling Ms. Gates-Jackson. Ms. Gates-Jackson survived the attack. Seven months after Mr. Thompson was released from prison for these offenses, police found Ms. Gates-Jackson's body in the back of a car that Mr. Thompson was driving.

There was evidence that Ms. Gates-Jackson and Mr. Thompson had driven together shortly before her death and that they had fought. The forensic pathologist who examined Ms. Gates-Jackson's body concluded that she died of asphyxia due to strangulation. Mr. Thompson was charged with her murder.

B. <u>Mr. Thompson's Defense Was That Ms. Gates-Jackson Died from an Underlying Health Condition; He Attempted To Subpoena Ms. Gates-Jackson's Medical Records</u>

Mr. Thompson's defense theory was that Ms. Gates-Jackson did not die from strangulation but instead died from an underlying health condition. To support that defense, Mr. Thompson wanted to subpoena Ms. Gates-Jackson's medical records.

In May 2021, Mr. Thompson e-mailed the prosecutor and Ms. Gates, informing them that he intended to subpoena Ms. Gates-Jackson's medical records. Ms. Gates did not move to intervene as a party at the trial court level. Instead, Ms. Gates' attorney filed a notice of limited appearance. Ms. Gates then filed a motion for a protective order and Mr. Thompson withdrew the subpoena.[2] Mr. Thompson did not object to Ms. Gates' intervention in the lawsuit.

On January 3, 2022, Mr. Thompson moved the trial court to issue a subpoena duces tecum under CrR 4.7 to obtain Ms. Gates-Jackson's medical records. Ms. Gates filed a memorandum opposing the motion and also opposed the motion at oral argument.

---

[2] The record does not include a copy of this email exchange or the motion for protective order. Nevertheless, the parties agree on this version of events.

3

The State did not file a memorandum opposing Mr. Thompson's motion and did not add to Ms. Gates' oral arguments.

The trial court entered a protective order and denied Mr. Thompson's motion for subpoena duces tecum for Ms. Gates-Jackson's medical records.

Mr. Thompson then filed a second motion for a subpoena duces tecum for Ms. Gates-Jackson's medical records. Once again, Ms. Gates took the lead in filing a memorandum opposing the second motion. The trial court denied Mr. Thompson's second motion.

After a trial, the jury found Mr. Thompson guilty of murder in the second degree, with a finding that it was a crime of domestic violence.

II

THE COURT OF APPEALS GRANTED MS. GATES' REQUEST TO INTERVENE FOR THE LIMITED PURPOSE OF ADDRESSING MR. THOMPSON'S CLAIM THAT THE TRIAL COURT ERRED IN DENYING HIS REQUEST TO SUBPOENA THE MEDICAL RECORDS

Mr. Thompson appealed his conviction, raising several arguments, one of which was that the trial court erred in denying his requests to subpoena Ms. Gates-Jackson's medical records. Ms. Gates moved to intervene in the appeal solely on this issue. Mr. Thompson opposed the motion.

The Court of Appeals' commissioner granted Ms. Gates' motion:

Because it appears undisputed that the trial court allowed Gates to intervene on this issue and likely considered her briefing and argument, and because Gates is a more appropriate representative than the State regarding the privacy and confidentiality of the victim's medical records,

4

the motion for intervention and an opportunity to file a brief on the single identified issue is granted.

Notation Ruling, *State v. Thompson*, No. 85515-8-I, at 2 (Wash. Ct. App. May 21, 2024).

Mr. Thompson moved to modify the commissioner's ruling. RAP 17.7. The Court of Appeals denied the motion to modify. Ord. Denying Mot. to Modify, *State v. Thompson*, No 85515-8-I (Wash. Ct. App. Aug. 2, 2024).

In her brief, Ms. Gates confined the issues that she would be addressing solely to Mr. Thompson's attempt to subpoena the medical records:

1.  Are the deceased's medical records private, confidential, and privileged records protected by common, state, and federal law and physician-patient privilege?

2.  Did the Appellant concede at trial that the records were private and confidential?

3.  Did the trial court properly deny Appellant Lester Thompson's request to obtain years of medical records of Destinie Gates-Jackson, his homicide victim, when he did not make a particularized showing that the records were likely to contain material facts useful to the defense?

Intervenor's Responsive Br., *State v. Thompson*, No. 85515-8-I, at 1 (Wash. Ct. App. July 11, 2024). Mr. Thompson moved for discretionary review.[3]

---

[3] The State did not address Ms. Gates' intervention until its supplemental brief to this court. Mr. Thompson subsequently filed a motion to strike the supplemental brief or, in the alternative, to file an additional supplemental brief in response to the State. We deny Mr. Thompson's motion to strike and grant his alternative motion to file a supplemental response brief.

## III
### WHERE A TRIAL COURT HAS ALLOWED A THIRD PARTY TO INTERVENE TO PROTECT A LEGALLY COGNIZABLE INTEREST, APPELLATE COURTS HAVE THE DISCRETIONARY AUTHORITY TO ALLOW THAT THIRD PARTY TO INTERVENE ON APPEAL SO LONG AS THE INTERVENTION IS LIMITED TO THE ISSUES ADDRESSED BELOW

A. <u>The Trial Court Allowed Ms. Gates To Intervene in Order To Protect the Confidentiality of Ms. Gates-Jackson's Medical Records</u>

Ms. Gates did not move to intervene as a party at the trial court level. Instead, Ms. Gates' attorney filed a notice of limited appearance. Ms. Gates then opposed the motions. Mr. Thompson did not object to this procedure.

Mr. Thompson argues that Ms. Gates "did not—and could not—intervene in the trial court." Suppl. Br. of Pet'r at 34. That is inaccurate. It would be difficult to characterize Ms. Gates' action in the trial court as anything other than an intervention. Filing memoranda and arguing in court certainly were intervening at the trial court for the limited purpose of protecting privacy interests.

Mr. Thompson has not assigned error to that intervention. Indeed, Mr. Thompson's position is that, while it was permissible for Ms. Gates to intervene in the trial court, it was not permissible for her to intervene in the appeal.

B. <u>Because Ms. Gates Was Allowed To Intervene at the Trial Court Level, the Appellate Court Had the Discretion To Allow Her To Intervene in the Appeal To Address Solely the Issues She Had Addressed Below</u>

The issue raised in this case is whether the Court of Appeals has the authority to allow a nonparty to intervene in the criminal appeal, limited solely to the issues for which they were allowed to intervene at the trial court level.

6

Mr. Thompson argues that nonparties may not intervene in a criminal case. Reply in Supp. of Discr. Rev. at 2. While this was once a general rule in Washington, that is no longer the case.

Mr. Thompson cites *State v. Bianchi*, 92 Wn.2d 91, 92, 593 P.2d 1330 (1979). In that criminal case, the newspaper Bellingham Herald moved to intervene at the trial court level to obtain a copy of the affidavit of probable cause determination, which had been placed under seal. The trial court granted the newspaper's motion to intervene for that limited purpose. *Id.*

This court reversed the trial court and held that intervention in a criminal case is not allowed. *Id.* In *Bianchi,* we noted that there is no rule in the Washington Rules of Criminal Procedure that allows a third party to intervene. *Id.* We stated that third parties cannot have an interest in the determination of whether someone is innocent or guilty. *Id.* at 94. We noted that the newspaper had other avenues to seek relief. *Id.* at 93. We accordingly held that the trial court erred in allowing the newspaper to intervene in that criminal action.

The prohibition on a nonparty intervening in a criminal action has been relaxed.

In *State v. Mendez*, 157 Wn. App. 565, 569, 238 P.3d 517 (2010), *adhered to on remand*, noted at 166 Wn. App. 1024 (2012), the Yakima Herald-Republic moved to intervene at the trial court level to unseal certain records after the criminal trial was finished but before the appellate process had run. The trial court granted the motion. *Id.*

On appeal, the defendant argued that intervention in a criminal matter is not allowed. *Id*. at 570. The Court of Appeals noted that the legal landscape had changed since *Bianchi*, and that nonparties are allowed by statute, court rule, and precedent to be involved in criminal lawsuits. *Id*. at 574.

The factors the *Mendez* court considered apply to this case.

First, the *Mendez* court noted that the *Bianchi* court's concern that third-party involvement could disrupt a pending criminal case was not present there. The court concluded, "The policy concerns present in *Bianchi* simply do not exist when the criminal conviction is final." *Id*. at 578. The same is true here. Mr. Thompson's criminal trial has concluded. Mr. Thompson appealed and is raising the argument that the trial court erred by refusing to issue the subpoenas. Ms. Gates' appellate intervention is not adding new issues to this appeal. She is simply addressing the same issue that she addressed in the trial court. Her involvement does not disrupt a pending criminal case.

Second, the *Mendez* court recognized that the Yakima Herald-Republic could have brought a mandamus action against the trial judge. *Id*. If that happened, then the defendant might not have been allowed to intervene in that mandamus action. The same is true here. Ms. Gates could have filed a separate civil action to protect her daughter's medical records. If she had, there would be some uncertainty as to whether Mr. Thompson could intervene in that separate civil lawsuit.

8

Third, the *Mendez* court noted that even if the defendant had been allowed to intervene in such a civil action, he would not have the right to counsel at public expense. *Id*. The court stated:

> While third parties may prefer to bring a separate action for tactical reasons, they are not required to do so for public policy reasons. An indigent criminal defendant is better served when a sealing order is challenged in the criminal case where the order was entered. This is the simplest and most efficient mechanism for review of a sealed document and is also the process most likely to result in full litigation of the merits because the defendant will be taking part.

*Id*. at 579.

The same is true here. If Ms. Gates had brought a separate civil action to protect the confidentiality of her daughter's medical records, then Mr. Thompson, even if he could intervene, would not have had an attorney appointed for him by the State. Allowing third-party intervention in these limited circumstances ensures that defendants will be able to participate in matters involving their criminal case.

We agreed with the *Mendez* court's analysis in *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 246 P.3d 768 (2011). There, we expressly modified our decision in *Bianchi* by holding that a third party may intervene, after trial is complete, to review a trial court's decision to seal documents. *Id*. at 781.

There, the newspaper moved to intervene in a criminal case after the trial had finished, seeking to obtain copies of sealed documents. *Id*. at 799. The defendant objected, citing *Bianchi*. *Id*. The trial court granted the newspaper's motion. *Id*. We affirmed, holding:

As the Court of Appeals in *Mendez* reasoned, *Bianchi* is factually distinguishable. There the request to intervene was made pretrial while in *Mendez* the Herald-Republic moved to intervene after the defendant pleaded guilty. Additionally, as the court pointed out, many of the considerations supporting our decision in *Bianchi* are no longer true. First, after *Bianchi* was decided this court adopted GR 15 in order to create "a uniform procedure for the destruction, sealing, and redaction of court records." GR 15(a). Although not explicit, subsection (e)(2) of the rule anticipates that nonparties may move to unseal records in a criminal case and provides for notice to affected parties. Second, both state and federal courts that have considered this issue since *Bianchi* generally favor limited intervention in such cases, despite the absence of express language permitting intervention in the Federal Rules of Criminal Procedure or the state procedural rules at issue. We also agree with the policy reasons cited in *Mendez* supporting limited intervention—the procedure allows the criminal defendant to be a necessary party and allows for counsel for indigent defendants. Finally, *Bianchi*'s concern with disrupting the pending criminal proceedings is not implicated once the trial has ended.

We hold that a limited intervention to revisit a prior sealing decision under GR 15(e) is a proper procedure for nonparties to use in a criminal case when a trial has been completed and we modify *Bianchi* to the extent it is contrary.

*Id.* at 800-01 (citations omitted).

In this situation, RAP 7.3 provided the Court of Appeals with the authority to allow Ms. Gates to intervene for a limited purpose. RAP 7.3 provides in part:

The appellate court has the authority to determine whether a matter is properly before it, and to perform all acts necessary or appropriate to secure the fair and orderly review of a case.

Mr. Thompson argues that allowing intervention under RAP 7.3 would inhibit, rather than secure, the fair and orderly review of this appeal. Suppl. Resp. Br. of Pet'r at 10. Mr. Thompson does not explain, however, why Ms. Gates' intervention at the

10

trial court level, which he did not oppose, is permissible and why that same intervention at the appellate level becomes impermissible.

Mr. Thompson argues that on appeal he now faces two respondents and, in effect, "'two prosecutors.'" *Id*. at 11. However, this is no different from the situation at the trial court level. Moreover, it is incorrect to characterize Ms. Gates as a second prosecutor. Instead, Ms. Gates' role in the appeal is limited in the same manner as it was in the trial court: the only issue she may address is whether Mr. Thompson should be allowed access to her daughter's health care records. Justice Gordon McCloud makes a similar argument in the dissent, pointing out that it is the prosecutor who decides whether to bring an action and, if so, how that action is pursued. That is correct. The prosecutor's ability to decide strategy is not affected by our holding. Instead, our holding provides the Court of Appeals with the discretion to allow a person to continue seeking to protect health care records on appeal when they were allowed to do so at the trial level.

The dissent acknowledges that Ms. Gates could have brought a separate civil lawsuit to quash any attempt by Mr. Thompson to subpoena her daughter's health care records and that she had the right to appeal any adverse ruling. The dissent fails to explain the functional difference to Mr. Thompson if Ms. Gates had brought a civil action that quashed any subpoenas issued by the court in the criminal action. Justice Gordon McCloud suggests that the civil action would only determine whether the health care records are confidential, which she concedes is not a debatable question—

they are.  Justice Gordon McCloud likewise assumes that the court in the civil action would not consider the reasons Mr. Thompson is seeking those records.  On the contrary, a court faced with a motion to quash must consider all the arguments as to why the subpoena should be issued, together with all arguments against the issuance of the subpoena.

Mr. Thompson concedes that Ms. Gates had the right to intervene at the trial court level to protect the confidentiality of her daughter's medical records.  Moreover, Mr. Thompson agrees that Ms. Gates would have the right to appeal that issue if the trial court had granted Mr. Thompson's motion.

> Had the court issued the subpoenas over the estate's objection, Ms. Gates could have moved the Court of Appeals for discretionary review of that limited issue.  RAP 2.3(a).  Review under RAP 2.3 is, of course, discretionary—but, "for meritorious claims, the discretionary review screening should present no great obstacle to obtaining review." *In re Det. of Petersen*, 138 Wn.2d 70, 89, 980 P.2d 1204 (1999).

Suppl. Br. of Pet'r at 28-29.

The fact that Ms. Gates could seek discretionary review of an adverse ruling supports her argument that she is allowed to intervene in this appeal.

Mr. Thompson asserts that Ms. Gates should not be allowed to intervene in the appeal because if the Court of Appeals reversed then she could once again intervene at the trial court level:

> If Mr. Thompson prevails on appeal, Ms. Gates may again appear in the trial court to oppose the subpoenas under CrR 4.8.  Intervention as a party to Mr. Thompson's appeal is not necessary for her to assert her interests.  Nor is it supported by the law.

*Id.* at 32.

It is difficult to understand why Ms. Gates should be allowed to protect her interests at the trial court level but then not be able to protect those same interests on appeal. Under Mr. Thompson's view, if the matter returned to the trial court and the trial court adversely ruled against Ms. Gates, she would be allowed to appeal that decision. And yet, Mr. Thompson argues, Ms. Gates should not be allowed to protect her interest when Mr. Thompson appeals. Neither logic nor policy requires that outcome.

Mr. Thompson additionally argues that Ms. Gates' interest was adequately represented by the State and, thus, there was no need for her to intervene. The Court of Appeals concluded differently. The Court of Appeals has the discretion to make that decision.

Under our ruling today, a party that was allowed to intervene at the trial court level does not have the automatic right to intervene at the appellate level. Instead, the Court of Appeals has the discretion under RAP 7.3 to allow intervention if it believes that intervention is necessary or appropriate to secure the fair and orderly review of the case.

IV
CONCLUSION

The trial court allowed Ms. Gates to intervene to protect the confidentiality of her daughter's medical records. Mr. Thompson agrees that Ms. Gates had the right to intervene at the trial court level.

Ms. Gates wants to protect that same interest on appeal. She is seeking to intervene solely to address that issue. Under RAP 7.3, the Court of Appeals has the discretion to allow that limited intervention. Accordingly, we affirm the Court of Appeals' decision allowing Ms. Gates to intervene solely on the issue of whether the trial court erred in denying Mr. Thompson's motions to subpoena Ms. Gates-Jackson's medical records.

_____
Mungia, J.

WE CONCUR:

_____
Johnson, J.

_____
Yu, J.

_____
Montoya-Lewis, J.

_____
González, J.

No. 103338-9

WHITENER, J. (dissenting)— Victims and survivors of victims are afforded a "significant" role in our criminal justice system. RCW 7.69.010. However, this role must be limited. The only two parties to a criminal appeal are the defendant and the State, and upon motion, an appellate court may grant permission to file an amicus curiae brief, but only if all parties consent or if the filing of the brief would assist the appellate court. RAP 10.6. In this case, the only question for us to answer is whether the trial court erred when it allowed the victim's mother to intervene on the defendant's *appeal* and to file a brief as a *party*. Neither our constitution nor our precedent and court rules allow such action. Accordingly, I dissent.

Lester Purdell Thompson Jr. was convicted for the murder of Destinie Gates-Jackson, and he was sentenced to life without the possibility of parole. Thompson's defense at trial was that natural causes, not strangulation, may have been the cause of Gates-Jackson's death, and he retained forensic pathologist Dr. Carl Wigren to advance his defense theory. Clerk's Papers (CP) at 116-17, 492-94, 499-500. In preparing his defense, Thompson issued subpoenas to obtain Gates-Jackson's medical records from multiple medical facilities. Rep. of Proc. (RP) (Jan. 28, 2022)

at 60; RP (Dec. 9, 2022) 107-15; CP at 495, 529-34, 606-10. Gates-Jackson's

mother, Jeri Gates, on behalf of her daughter's estate, did not move to intervene at

the trial level and through an attorney filed a notice of limited appearance, to object

to the issuance of Thompson's subpoenas, and to request a protective order. CP at

519, 557, 616. Gates requested and the court granted her motion to deny Thompson's

motions on privacy and confidentiality grounds. CP at 519, 528, 557, 580, 616; RP

(Dec. 9, 2022) at 121.

Thompson appealed his conviction and assigned error to the trial court's order

denying his motions for subpoenas for Gates-Jackson's medical records. In his

appeal, he renewed his motion for the subpoenas for Gates-Jackson's medical

records. Gates then motioned the Court of Appeals to intervene to protect her

daughter's privacy, asserting that her intervention was permitted under RAP 17.4(e).

ANALYSIS

This case involves a criminal appeal. Under our Rules of Appellate Procedure,

only "[a] person with a recognized interest in the subject matter of the motion may

submit a written answer to the motion." RAP 17.4(e). The purpose of criminal

appeals is multifold: (i) "to protect against miscarriages of justice" by determining

whether a defendant received a fair trial, (ii) "correct anomalous applications of the

law in particular cases," (iii) provide "legitimacy to the criminal justice system as a

2

whole," and (iv) settle questions of law.[1] The "recognized interests" of persons at a

defendant's criminal trial does not extend to the defendant's criminal appeal.

In Washington State, *State v. Bianchi* is the foundational case on the issue of

third-party intervention in a criminal case. 92 Wn.2d 91, 593 P.2d 1330 (1979). In

reversing the Court of Appeals' decision to allow a newspaper to intervene in a

pending criminal case in order to challenge the sealing of the affidavit of probable

cause, we noted that there was "no rule, statute, or precedent" permitting a third

party to intervene in a criminal case. *Id*. at 91-95. We acknowledged that the press

had no "direct interest" in the *outcome* of the case and held, "The only purpose of a

criminal trial is the legal determination of the defendant's guilt or innocence." *Id*. at

92. Given the lack of press interest in the outcome, there was no justification for

"intervention and the disruption of the pending criminal proceedings inherent in the

intervention process." *Id.* at 92-93. In 1989, after we decided *Bianchi*, this court

adopted GR 15. The rule provided a uniform procedure for the destruction, sealing,

and redaction of court records. GR 15(a). Simply put, GR 15 is another means for a

third party to challenge a sealing order, and the rule is applicable to both civil and

criminal cases. In a civil case, the court or *any party* may move to seal or redact the

---

[1] Peter D. Marshall, *A Comparative Analysis of the Right to Appeal*, 22 DUKE J. COMPAR. & INT'L L. 1, 2-4 (2011), https://scholarship.law.duke.edu/djcil/vol22/iss1/1/.

court record, and only the parties are entitled to reasonable notice of the motion. GR 15(c)(1). In a criminal case, "*any interested person*" may move to seal or redact the court records, and notice must be given to various *nonparties*. *Id*. Gates is a nonparty in Thompson's criminal proceeding and she is also an "interested person" entitled to notice, but under this rule she was limited to moving the court to seal or redact the court record in order to protect her daughter's privacy interest in the medical records. However, she was not entitled to a protection order prohibiting Thompson from obtaining the medical records he needed for his defense.

Subsequent to *Bianchi*, there were attempts to develop the third-party intervention in the criminal law jurisprudence in our state. In *State v. Cloud*, the defendant, Cloud, was convicted after a jury trial and his defense attorney was discharged. 95 Wn. App. 606, 976 P.2d 649 (1999). Cloud with a new attorney moved to set aside the jury verdict, alleging ineffective assistance of the trial defense attorney. *Id*. at 608-09. The trial court allowed the defendant's discharged trial attorney to intervene in order to maintain his reputation. *Id*. at 610-11. The Court of Appeals reversed the trial court's error in allowing intervention. The court reasoned that to allow intervention by a former attorney, to protect their reputation in a posttrial proceeding, would "undercut" the fundamental value of the attorney-client relationship and therefore the intervention was prejudicial. *Id*. at 614-16.

Later in *State v. Mendez*, the Court of Appeals held that while *Bianchi* did not impose a per se prohibition against third party intervention in a criminal case, it would now be authorized in limited circumstances. 157 Wn. App. 565, 573-74, 238 P.3d 517 (2010), *adhered to on remand*, noted at 166 Wn. App. 1024 (2012). The court found that "[t]hird party 'intervention' in a criminal case" was possible for "interested persons" "to the limited extent authorized by the rule" and that "article I, sections 10 and 22" of our constitution authorized intervention, at least to allow the public to challenge a sealing order. *Id*. at 577.

In *Yakima County v. Yakima Herald-Republic*, this court agreed with the policy reasons cited in *Mendez* supporting limited intervention. 170 Wn.2d 775, 801, 246 P.3d 768 (2011). We held that a limited intervention to revisit a prior sealing decision under GR 15(e) is a proper procedure for nonparties to use in a criminal case when a trial has been completed and we modified *Bianchi* to the extent it was contrary. *Id. Yakima Herald-Republic* was a posttrial criminal case with a pending appeal and the Yakima Herald-Republic moved to intervene for the limited purpose of challenging the continued orders sealing the pleadings and other financial documents. *Id.* at 783. Here, Gates' motion to intervene in Thompson's pending appeal is for the limited purpose of asserting a privacy interest in his motion to obtain the victim's medical records to present his defense. GR 15 relief that is available is

5

limited to sealing or redacting the court records. It is not to be used to prohibit

Thompson's use if relevant in his defense.

This case is factually distinguishable from *Bianchi* (privacy rights of a

decedent during an appeal versus First Amendment rights to access information

during a trial). 92 Wn.2d at 92. It is also distinguishable from *Cloud* (limited

intervention in defendant's appeal versus protection of the counsel's professional

interests) and from *Yakima Herald-Republic* (newspaper's intervention was

posttrial, to access sealed court records based on freedom of information and the

public's right to know). *See Cloud*, 95 Wn. App. at 613; *Yakima Herald-Republic*,

170 Wn.2d at 801. RCW 70.02.140 allows a personal representative of a deceased

patient to exercise all of the deceased patient's rights. Under this statute Gates, a

survivor of a victim and, therefore, "an interested party," seeks to intervene in the

defendant's appeal to prevent the defendant from accessing the private health

records of her deceased daughter, which he alleges are necessary to his defense.[2] As

---

[2]  Chapter 70.02 RCW provides patients with the right to authorize and revoke access to their health information records, as well as the right to correct those records. In the event that a person is deceased, their representative can assert those rights. At the federal level, the Health Insurance Portability and Accountability Act of 1996 protects the privacy and confidentiality of health information of deceased persons for 50 years after death and the person authorized under applicable law to act on behalf of the decedent or the decedent's estate can enforce those privacy rights. *Health Information of Deceased Individuals*, U.S. DEP'T OF HEALTH & HUM. SERVS. (Sept. 19, 2013) https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/health-information-of-deceased-individuals/index.html [https://perma.cc/XJW9-N3ML].

a matter of first impression, the analytical frameworks presented by *Bianchi*, *Cloud*,

and *Mendez* indicate that Ms. Gates' intervention in Thompson's criminal trial is

permitted. However, these cases do not support Gates' extending that limited

intervention in Thompson's appeal. The parties to a criminal action are the State and

the defendant. The sole purpose of a criminal trial is to determine legally a

defendant's guilt or innocence. *Bianchi*, 92 Wn.2d at 92. The primary purpose of a

criminal appeal is different: its focus is to determine whether the defendant received

a fair trial. At trial Gates was an "interested third party" with the limited right to

enforce her daughter's privacy rights to the medical records. *See Comaroto v. Pierce

County Med. Exam'r's Off.*, 111 Wn. App. 69, 43 P.3d 539 (2002) (discussing that

a suicide note was a public record and was exempt from disclosure under the Public

Disclosure Act's provision, and that relatives of the deceased had a protectable

privacy interest in the record). However, this limited role did not grant her "party"

status to Thompson's criminal trial, nor did it extend those limited rights to

Thompson's appeal of his conviction.

Washington law allows crime victims and survivors of victims of crimes

rights and a role within the criminal justice system. *See, e.g.,* WASH. CONST. art. I,

§ 35; ch. 7.69 RCW.  We have repeatedly interpreted crime victims' and survivors

of crime victims' rights. However, these interpretations have been limited to their

7

rights within the context of criminal trials and sentencing and have not been extended to criminal appeals. *See, e.g., State v. Gentry*, 125 Wn.2d 570, 628-29, 888 P.2d 1105 (1995) (explaining that Wash. Const. art. I, § 35 intended that a victim or victim's representative should be allowed to make a statement at sentencing "unless there is a direct constitutional impediment" and holding that the U.S. Supreme Court's decision in *Payne v. Tennessee*, 501 U.S. 808, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991), removed any per se federal constitutional bar to the admission of victim impact statements); *L.H. v. Dep't of Lab. & Indus.*, 86 Wn. App. 512, 514, 940 P.2d 657 (1996) (interpreting the RCW's residency requirement for the provision of benefits); *Koenig v. Thurston County*, 175 Wn.2d 837, 844, 287 P.3d 523 (2012) (confirming that the constitution and RCW 7.69.030 give victims direct access to the trial court to communicate independently prior to sentencing); *State v. MacDonald*, 183 Wn.2d 1, 16, 346 P.3d 748 (2015) (highlighting that Washington's crime victims' rights do not abrogate a defendant's due process right and are not to be considered in a vacuum but must be considered together with a defendant's due process right).

Gates undoubtedly has an interest in and is likely to be impacted if, on appeal, Thompson's sentence is reduced, his case is remanded for a new trial, or he is released. However, Gates' interest in Thompson's criminal appeal is not a "direct

interest," nor is she an "interested party" to his appeal. The majority correctly points out that Gates could have filed a separate civil action to protect her daughter's medical records. Majority at 8. However, what's before us is a criminal appeal and not a civil case. Unlike CR 24(b) where Gates may have the ability to intervene, there is no legal authority available to do so through the criminal process. Civil and criminal rules are different by design and necessity because of the discrete rights and interests the court considers. The Washington Rules of Criminal Procedure do not have a third-party intervention provision as do the Rules of Civil Procedure. There is good reason for that distinction, and Gates has not shown why she should be permitted, by improper analogy, to extend the limitations to allow intervention in a defendant's criminal appeal.

A criminal defendant has a constitutional guaranty of "the right to appeal in all cases." WASH. CONST. art. I, § 22. It is true that crime victims and crime victim survivors play a "significant" role in the justice system and their participation is vital to the "general effectiveness and well-being of the criminal justice system." RCW 7.69.010. Our constitution and statutes regarding victim and survivor rights are equally clear. Both Wash. Const. art. I, § 35 and RCW 7.69.030 provide for multiple victim rights, including the right to make victim impact reports before the court or provide a statement at sentencing. However, party status has not been a right

provided to victims in a defendant's criminal case. Neither the constitution nor statutes enumerate a victim's or a victim survivor's general rights to privacy, their right to the privacy of medical records specifically, their right to seek interlocutory appeal, or their right to intervene in a criminal appeal. Where a victim's rights impede a defendant's due process rights, courts "must make every reasonable effort to harmonize these distinct rights and to give meaning to all parts of the Washington State Constitution." *MacDonald*, 183 Wn.2d at 16. To the extent these rights cannot be reconciled, federal due process rights supersede any rights arising under Washington's statutes or constitution. *Id.* The civil relief Gates seeks to protect, the privacy rights in her daughter's medical records, should not be injected into Thompson's right to appeal his criminal conviction. Gates has no constitutional or statutory right to intervene in this criminal appeal. I would overrule the Court of Appeals decision.

Whitener, J.

Madsen, J.

No. 103338-9

GORDON McCLOUD, J. (concurring in dissent)—Lester P. Thompson Jr. was convicted of murder. Jeri Gates is the mother of the victim. The Court of Appeals granted Gates' motion to intervene in the appeal of this criminal conviction for the following reason: "because Gates is a more appropriate representative than the State regarding the privacy and confidentiality of the victim's medical records." Notation Ruling, *State v. Thompson*, No. 85515-8-I, at 2 (Wash. Ct. App. May 21, 2024).

This is incorrect. A third party, even a third-party victim (or, as in this case, victim's survivor), is not the "more appropriate representative than the State" regarding any of the issues before the Court of Appeals on the appeal of a criminal conviction. As Justice Whitener's dissent explains, this is true for several reasons. And I agree with the reasons listed by the dissent. But I write separately to detail a few more.

First, as a society, we have made a decision that the criminal case is not a dispute between the victim and the defendant, but a dispute between the State and the defendant. That is why the prosecution is done in the name of the State, not in

1

the name of the victim or the victim's representative. The prosecutor—part of the executive branch of government—makes the decision about whether and how to proceed in court, not the victim (or victim's family). In fact, if the prosecutor has a personal stake in the outcome of a criminal case, that is a good reason for that prosecutor to recuse from the case—not for that prosecutor to dig in to pursue their own personal ends. *See, e.g., State v. Ladenburg*, 67 Wn. App. 749, 751, 840 P.2d 228 (1992) ("If a prosecutor's interest in a criminal defendant or in the subject matter of the defendant's case materially limits his or her ability to prosecute a matter impartially, then the prosecutor is disqualified from litigating the matter . . . ." (citing *State v. Stenger*, 111 Wn.2d 516, 520-23, 760 P.2d 357 (1988))), *abrogated on other grounds by State v. Finch*, 137 Wn.2d 792, 808-10, 975 P.2d 967 (1999); RPC 1.7 (existence of a significant risk that a lawyer's representation of a client will be materially limited by the lawyer's personal interests creates a conflict of interest), 3.7 (generally, a lawyer may not act as an advocate in a trial in which they are likely to be a necessary witness).

Permitting the victim or victim's representative to intervene because they have a more pressing personal stake in the matter contravenes that fundamental rule.

Second, the criminal appeal—unlike the criminal trial—presents only one question: whether the trial court committed legal error entitling the defendant to trial or sentencing relief. The answer to that question must be based on a review of the record of the proceedings in the trial court, not by letting third parties create a fuller record in the appellate court. The victims' rights amendment to the Washington Constitution, article I, section 35, and the related victims' rights statute, RCW 7.69.030, seem to recognize this difference between the purpose and structure of proceedings in the trial courts and the purpose and structure of proceedings in the appellate courts: they both provide victims or their representatives with rights to notice and an opportunity to be heard throughout proceedings in the trial court—but not during proceedings in the appellate court. We presume that when the legislature enacts a statute establishing several listed rights but omitting other rights, the omission (in this instance, of appellate court rights) was intentional. *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 680, 389 P.3d 476 (2017) ("[W]here the legislature includes particular language in one section of a statute but omits it in another, the exclusion is presumed intentional." (citing *Millay v. Cam*, 135 Wn.2d 193, 202, 955 P.2d 791 (1998))).

Permitting the victim or the victim's representative to intervene to express their more personal stake in the matter contravenes these fundamental rules of appellate procedure, also.

Third (and closely related to the second reason, above), the issues for decision in a criminal appeal are legal, not factual. For that reason, the appellate court cannot consider new evidence that was not brought to the trial court's attention. Gates or her representative is very likely the "more appropriate representative than the State" regarding how invasion of her daughter's private medical records would negatively affect Gates or her family. But they are not "the more appropriate representative than the State['s]" able legal counsel on the appellate legal issue of whether disclosure of private records is nevertheless necessary to protect the defendant's constitutional rights to present a complete defense, to confront and cross-examine accusers, or to obtain information that might tend to negate guilt or mitigate punishment.

Permitting a third party such as the victim or the victim's representative to intervene to express their more personal stake in the matter on appeal is inconsistent with this structure of the appellate process.

To be sure, our court rules explicitly recognize that third parties have a limited right to participate in criminal cases in certain situations. But that

permissible participation—which should not necessarily even be called "intervention"[1]—always occurs in the trial court. In this case, for example, CrR 4.8(b)(4) explicitly provides a third party with the right to move to quash a subpoena in the trial court in the criminal case. And that third party has the right to seek immediate review of an adverse decision on such a motion to quash. RAP 2.3.[2]

But we have no court rule allowing a third party to intervene as a party to the criminal appeal itself, on the side of the State, as a second prosecutor. The fact that our court rules permit limited participation by third parties, like the third party in this case in the trial court, but not in the appellate court, of course, indicates a conscious policy choice in favor of limited participation at the trial court level, but not at the appellate level. *See, e.g., Perez-Crisantos*, 187 Wn.2d at 680; *State v.*

---

[1] Indeed, "[w]hether third party participation in a criminal case should be termed 'intervention' is a debatable question since authorized involvement is typically limited to specific actions and is not the broader participation found in the civil rules." *State v. Mendez*, 157 Wn. App. 565, 579 n.9, 238 P.3d 517 (2010), *adhered to on remand*, noted at 166 Wn. App. 1024 (2012).

[2] In federal court, that third party would have an appeal under the collateral order doctrine. In Washington, that third party has only the limited right to seek discretionary review. *See generally* Ian Cairns, *Beyond the Writ: Restoring the Protective Power of RAP 2.3(b)(3)*, KING COUNTY BAR BULL., July 1, 2025, https://www.kcba.org/?pg=News-Bar-Bulletin&blAction=showEntry&blogEntry=127562 [https://perma.cc/42LA-RDDJ]. There might well be good reasons for Washington to adopt the collateral order doctrine as part of our Washington rules to give a third party in that limited situation the power to appeal as a matter of right.

*George*, 160 Wn.2d 727, 735, 158 P.3d 1169 (2007) (we interpret court rules "as though they were drafted by the legislature" (citing *State v. Greenwood*, 120 Wn.2d 585, 592, 845 P.2d 971 (1993))).

The majority certainly has the authority to create such a procedure, as it does in this case, despite our rules, as a matter of policy. But the majority's decision to create such a procedure in this case is a bad policy. It undermines the function of the criminal appeal as a dispute between the criminal defendant and the voice of the State as expressed through the people's elected prosecutor, who is vested with authority to make decisions about how to handle criminal cases. It ignores the fact that our court rules allow such nonparty participation in the trial court, but not on appeal, thus implying that we sought to confine party participation in general to trial court proceedings in criminal cases. It ignores the fact that our appellate court rules explicitly allow amicus, or "friend of the court," briefing and oral argument in the appellate court to address just the matters that the third party in this case wants to address, RAP 10.6, but that those rules do not provide for intervention. It misunderstands the implications of the fact that the victims' rights amendment to the Washington Constitution and Washington's victim protection statutes—which recognize that victims have the right to notice and an opportunity to be heard in the trial court—created no new rights for victims or victim's representatives in the appellate process.

The majority also stretches the holdings of *State v. Mendez*, 157 Wn. App. 565, 238 P.3d 517 (2010), *adhered to on remand*, noted at 166 Wn. App. 1024 (2012),  and *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 790, 246 P.3d 768 (2011), far beyond their foundations to defend its new rule. In *Mendez*, a newspaper moved to unseal certain records in a criminal case under GR 15 after the trial had ended. The trial court granted the motion and the Court of Appeals affirmed. 157 Wn. App. at 579. We approved of *Mendez*'s analysis in *Yakima Herald-Republic*. 170 Wn.2d at 801. The majority opines that the factors the *Mendez* court considered in its decision to affirm apply with equal force here. Majority at 8-10.

They do not.

First, the *Mendez* court determined that unsealing the records did not present a risk of disruption to ongoing criminal proceedings. 157 Wn. App. at 578. The majority claims that the same is true here. Majority at 8. But in *Mendez*, there was no appeal pending. 157 Wn. App. at 568. The *Mendez* court specifically noted that "[a] conviction that was not yet final due to an appeal might present different disruption or disclosure concerns. We do not address that situation here." *Id.* at 578 n.8.

But we do address that situation here, in *Thompson*. In this case, Thompson

appeals the trial court's decision to deny Thompson's motion to issue subpoenas

for records that he argued are material to his defense, and the third party seeks to

intervene to argue against disclosure of those very records. In other words, the

issue that the third party seeks to address through intervention on appeal goes to

the substance of Thompson's defense. By contrast, in *Mendez*, the sealed records

that the newspaper sought related to defense requests for expenditures of funds, not

to any substantive issues in the case. So unlike in *Mendez*, allowing Ms. Gates to

intervene on appeal does disrupt ongoing criminal proceedings. This factor from

*Mendez* thus does not support permitting third-party intervention on appeal in this

case. Instead, this factor weighs against it.[3]

---

[3] In *Yakima Herald-Republic*, while the defendant's appeal was pending, a newspaper sought to obtain sealed records from the trial court under GR 15. 170 Wn.2d at 784-85. We held that this was permissible, but our holding was narrow: we held that "limited intervention to revisit a prior sealing decision under GR 15(e) is a proper procedure for nonparties to use in a criminal case when a trial has been completed." *Id.* at 801. *Yakima Herald-Republic* is distinguishable for many reasons—the limited intervention was permitted in the trial court, not the appellate court; the rule involved was different; and, like *Mendez*, it does not appear that the defendant's appeal had anything to do with the content of the sealed records or the fact of their sealing. By contrast, Thompson sought records that he claims are necessary to present his defense, the forum is now the appellate court, and the issues that the third-party intervenor will be permitted to argue relate directly to the merits of Thompson's appeal.

Second, the *Mendez* court noted that the newspaper could have brought a separate civil action to obtain the sealed records. In such a proceeding, the defendant would not be appointed counsel and might not be permitted to intervene at all. The *Mendez* court explained that "permitting the third party to seek unsealing in the criminal case would allow the defendant to be heard and take part in the action." 157 Wn. App. at 578.

The majority contends that the same reasoning applies here. It defends its new rule on the ground that it is really more protective of criminal defendants' rights than what we have now because recognizing the third party's right to intervene at all levels of court proceedings in criminal cases will ensure that the defendant benefits from the right to appointed counsel when these third-party issues—such as disclosure of the victim's medical records—are decided. The majority explains on this point, "If Ms. Gates had brought a separate civil action to protect the confidentiality of her daughter's medical records, then Mr. Thompson, even if he could intervene, would not have had an attorney appointed for him by the State. Allowing third-party intervention in these limited circumstances ensures that defendants will be able to participate in matters involving their criminal case." Majority at 9.

But that conclusion goes much further than *Mendez* or *Yakima Herald-Republic*, which dealt only with GR 15 motions to unseal in the trial court. Further, the majority's assumptions about a hypothetical separate civil action that a third party, such as a victim or survivor, might bring, and how they might impact the criminal case, are wrong. If a hypothetical civil action were separately filed by someone affected by decisions in a criminal case, that civil action might well determine certain discrete civil law issues, such as whether patient medical records (or corporate social media records, or cell phone location data, etc.) are confidential. But that is not really at issue here—of course patient medical records are confidential. The issues here, on the appeal of a criminal conviction, are different and are tied to the facts of the criminal case. Those issues include whether the patient's right to privacy in her medical records trumps the criminal defendant's constitutional rights to due process, to a complete defense, to a fair trial, and to confront and cross-examine accusers, given the specific facts of the criminal case (such as the defendant's particularized need for such records); whether the victim's privacy might be sufficiently protected by disclosure subject to a protective order given the particular facts of the criminal case; and whether in camera review of those records by the trial court judge is necessary for a fair decision and a fair trial in the criminal case. Those seem like matters that must be adjudicated in the criminal prosecution, where the right to counsel is guaranteed—

hence the existence of CrR 4.8(b)(4); they do not seem like matters that should be adjudicated in a separate hypothetical civil case that purports to bind the judge in the criminal case. In other words, the majority's contention that it is creating a procedure that is more likely to guarantee the criminal defendant an appointed lawyer when critical case-specific issues are decided is incorrect.[4]

To be sure, the majority endorses a limited, measured, approach to determining when a third party gets to intervene in appellate review of a dispute that society places in the hands of the criminal defendant and the State—not in the hands of the criminal defendant and the victim. I appreciate the limits on the right to intervene that the majority adopts.

---

[4] I also disagree with the majority's unsupported assumption that a criminal defendant's appointed counsel is not entitled to participate in nominally civil proceedings that run parallel to the criminal case and that threaten to decide critical issues in the criminal case (here, the issue of admissibility of defense-proffered records). Actually, when a criminal defense lawyer—appointed or retained—assumes the obligation to represent a defendant against criminal charges, that lawyer must be prepared for many collateral proceedings that could adversely impact the criminal case (consider, for example, the criminal defense lawyer's need to address parallel government civil proceedings that might threaten the defendant's Fifth Amendment rights, or the lawyer's need to consider and address immigration proceedings that might threaten all of the defendant's rights).

I appreciate it—but I still disagree with it. It places too little value on the legal system's reasons for taking criminal prosecutions out of the hands of victims and placing those prosecutions into the hands of the elected prosecutor, instead.

A third party, even a third-party victim or victim's survivor, is not the "more appropriate representative than the State" regarding any of the issues before the Court of Appeals on the appeal of a criminal conviction.

I therefore concur in the dissent.

_____
Gordon McCloud, J.

_____
Stephens, C.J.